1  Bingham McCutchen LLP
   WALTER M. STELLA (SBN 148215)
2  walter.stella@bingham.com
   BRYAN E. DALEY (SBN 227517)
3  bryan.daley@bingham.com
   Three Embarcadero Center
4  San Francisco, CA  94111-4067
   Telephone:  415.393.2000
5  Facsimile:  415.393.2286

6  Attorneys for Defendants
   UBS Financial Services Inc. (also sued as UBS/Paine
7  Webber) and UBS PartnerPlus Plan (erroneously sued as
   UBS/Paine Webber Partner's Plus)

8

9                  UNITED STATES DISTRICT COURT

10                NORTHERN DISTRICT OF CALIFORNIA

11                    SAN FRANCISCO DIVISION

12

| | |
|---|---|
| 13  Alva Gene Thaning, | No. 07-5528 MJJ |
| 14       Plaintiff, | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 15    v. | |
| 16  UBS/Paine Webber, UBS/Paine Webber Partner's Plus, UBS Financial Services, Inc., | |
| 17       Defendants. | |
| 18 | Date:      February 26, 2008 |
| 19 | Time:      9:30 a.m. Place:     Courtroom 11, 19th Flr. Judge:     Hon. Martin J. Jenkins |
| 20 | |

21        <u>NOTICE OF MOTION AND MOTION TO COMPEL</u>

22            <u>ARBITRATION AND FOR STAY</u>

23        TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:

24        PLEASE TAKE NOTICE THAT on February 26, 2008, at 9:30 a.m., or as soon

25  thereafter as the matter may be heard before the Honorable Martin J. Jenkins, in Courtroom 11 of

26  the above-captioned court, 450 Golden Gate Avenue, San Francisco, California 94102,

27  Defendants UBS Financial Services Inc. (also sued as UBS/Paine Webber) and UBS PartnerPlus

28  Plan (erroneously sued as UBS/Paine Webber Partner's Plus) (collectively, "Defendants") will

A/72373876.7

CASE NO.: 07-5528 MJJ

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY
PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1    and hereby do move for an order compelling arbitration and staying all causes of action alleged

2    in Plaintiff's Complaint filed on October 30, 2007.

3          This motion is based on the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1

4    *et seq.*, and is made on the grounds that the Complaint, and each and every cause of action

5    contained therein, is subject to binding arbitration.  Defendants have requested that Plaintiff

6    proceed to arbitration and stay this action, but Plaintiff has refused to do so.  (Declaration of

7    Walter M. Stella ¶ 2.)  Defendants have no other remedy but to compel arbitration and seek a

8    stay of these proceedings

9          This motion is based on this Notice of Motion and Motion, the attached

10   Memorandum of Points and Authorities, the accompanying Declarations of Michael O'Connell

11   and Walter M. Stella, all papers and records on file herein, and on all oral and documentary

12   evidence as may be presented at or before the time of the hearing on this matter.

13   **MEMORANDUM OF POINTS AND AUTHORITIES**

14   **I.     INTRODUCTION**

15         In this lawsuit, Plaintiff Alva Gene Thaning ("Thaning") tries to evade his clear

16   obligation to arbitrate his claims before the Financial Industry Regulatory Authority ("FINRA").[1]

17   Thaning was employed by defendant UBS Financial Services Inc. ("UBSFS") as a registered

18   securities representative.  (Declaration of Michael O'Connell ("O'Connell Dec.") ¶ 2.)  UBSFS

19   is a member firm of FINRA.  (*Id*. at ¶ 4.)  UBSFS terminated Thaning's employment for

20   improperly signing a client's name to a document and misrepresenting his conduct in response to

21   an investigation by management regarding the matter.  (*See id*. at ¶ 6, Ex. E at p.6.)  Thaning

22   claims that despite the fact that he was terminated, and despite the circumstances of his

23   termination, he is entitled to "firm contributions," -- *i.e.*, company contributions of money

24   intended primarily for retiring employees -- under the UBS PartnerPlus Plan (hereafter the

25   

26   [1] FINRA, created in July 2007, is the successor entity of the consolidation of two self-regulatory

27   organizations – the NASD and the enforcement unit of the New York Stock Exchange.  Thus, all references to "FINRA" herein include the NASD as well.

28

1   "Plan").[2]  (Complaint at p.5, ¶ 16.)  All of Thaning's contentions stem from his claim that he was

2   wrongfully denied these firm contributions under the Plan.  (*See id.*)  Defendants deny any

3   wrongdoing whatsoever and deny that Thaning is entitled to any damages.

4        Thaning's action may not proceed before this Court, but instead must be referred

5   to arbitration.  As detailed below, Thaning has executed a separate agreement in which he

6   voluntarily agreed to arbitrate the claims in his Complaint.  Specifically, upon his registration as

7   a securities representative in 1987, Thaning voluntarily signed a Uniform Application for

8   Securities Industry Registration or Transfer ("Form U-4"), in which he agreed to arbitrate any

9   claims or disputes arising between him, his member firm and any persons associated with his

10  member firm.  (O'Connell Dec. ¶ 2, Ex. A at 4.)  The Plan also requires Thaning to submit all

11  disputes between himself and UBSFS to arbitration.  (*Id*. at ¶ 5, Ex. D at p.18, ¶ 11.2.)

12       By filing suit in this court, Thaning is deliberately and improperly attempting to

13  avoid his contractual obligations to arbitrate before FINRA any claims arising from his

14  employment and business activities with UBSFS.  Thaning's voluntary agreement to arbitrate the

15  claims asserted in this case, and the strong federal policy favoring enforcement of arbitration

16  agreements, require that the Court stay or dismiss this action and order Thaning to present his

17  claims in arbitration before FINRA.

18  **II.    FACTUAL BACKGROUND**

19       UBSFS hired Thaning as a broker (now known as "financial advisor") trainee in

20  December 1987 through its predecessor, PaineWebber Incorporated.  (Complaint at p.3, ¶ 2.)  At

21  that time, Thaning executed a Form U-4 for the purpose of becoming a "registered

22  representative" with the NASD, which as detailed in n.1 *supra*, is now part of the FINRA.

23  (O'Connell Dec. ¶ 2; *see* Form U-4 attached as Exhibit "A" to O'Connell Dec.)

24  _____

25  [2]  The UBS PartnerPlus Plan, a copy of which is attached as Exhibit D to the Declaration of
26  Michael O'Connell, was the operative plan document at the time of Plaintiff's termination.
    Plaintiff attaches to his Complaint the previously operative plan sponsored by Paine Webber
27  Group Inc., the predecessor to UBSFS.  (*See* Complaint, Ex. B.)  Regardless, both plans contain
    a near-identical arbitration provision.

28

1    Like every individual working in the United States as a financial advisor in the

2    securities industry, Thaning was required, as mandated by the national securities exchanges, to

3    execute and become a party to the Form U-4. (O'Connell Dec. ¶ 2.) *See, e.g.,* Masucci,

4    *Securities Arbitration - A Success Story:  What Does the Future Hold?*, 31 Wake Forest Law

5    Review, 183, 186, n. 24 (1996); *Ottoman v. Fadden*, 575 N.W.2d 593, 594 (Minn. Ct. App.

6    1998).[3]

7    By signing the Form U-4 and registering with FINRA, Thaning agreed to abide by

8    FINRA's rules regarding arbitration.  Indeed, on Page 4, Paragraph 5, Thaning's Form U-4

9    explicitly provides:

10            I agree to arbitrate any dispute, claim or controversy that may arise
            between me and my firm, or a customer, or any other person, that
11            is required to be arbitrated under the rules, constitutions, or by-
            laws of the organizations with which I register, as indicated in item
12            10 as may be amended from time to time.

13    (O'Connell Dec. ¶ 2, Ex. A.)  Among the organizations listed in item 10 of Thaning's Form U-4

14    is the NASD. (*Id.* ¶ 2, Ex. A. at p.1.)  Further, on at least two occasions related to a customer

15    complaint, requiring mandatory disclosures under NASD rules, Thaning was provided with

16    written confirmation of his obligations under the Form U-4 agreement to arbitrate disputes,

17    including disputes between him and USBSFS. (*Id.* ¶ 3, Ex. B and Ex. C.)  These written

18    confirmations of Thaning's obligation to arbitrate were made in November 2001 and February

19    2003. (*Id.*)

20    The NASD Code of Arbitration Procedure for Industry Disputes (the "Code"),

21    moreover, plainly provides that the claims Thaning has asserted against UBSFS are required to

22    be arbitrated before FINRA:

23            Except as otherwise provided in the Code, a dispute must be
            arbitrated under the Code if the dispute arises out of the business
24            activities of a member or an associated person and between or

25    _____

26    [3] For the convenience of the Court, Defendants file concurrently herewith an Appendix of Select
    Authorities that includes this law review article, this Minnesota decision, and the NASD Code
27    section cited below.

28

1    among: Members; Members and Associated Persons; or
     Associated Persons.
2

3    NASD Code § 13200(a).[4]  UBSFS, as a registered securities broker/dealer was, at all relevant

4    times, and currently is a member of the FINRA, NYSE and other regulatory organizations.

5    (*Id.* ¶ 4.)

6            The Plan in effect at the time of Thaning's termination also requires that he

7    submit his claims to arbitration.  Specifically, Page 18, Paragraph 11.2 states:

8            **Arbitration.**  Subject to exhaustion of the procedures set forth in
             Section 11.1, in the event of any dispute, claim or controversy
9            involving a Participant or any other claimant and the Plan, or UBS
             Financial Services or any Sponsor, arising out of the Plan, any
10           such controversy shall be resolved before an NASD arbitration
             panel in accordance with the arbitration rules of the NASD.
11

12   (O'Connell Dec., ¶ 5, Ex. D.)[5]

13   **III.    ARGUMENT**

14       **A.    The Federal Arbitration Act Requires Arbitration Of Disputes Within The
                 Scope of U-4 Agreements.**
15

16           The Federal Arbitration Act declares that agreements to arbitrate "shall be valid,

17   irrevocable, and enforceable."  9 U.S.C. § 2.  The Supreme Court has unanimously held that "the

18   Act leaves no place for exercise of discretion by a district court, but instead mandates that district

19   courts *shall* direct the parties to arbitration on issues as to which an arbitration agreement has

20   been signed."  *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in

21   original).  Consequently, when confronted with a motion to compel, the Court's role "is strictly

22   limited to determining arbitrability and enforcing agreements to arbitrate, leaving the merits of

23   _____

24   [4] Despite the consolidation of the NASD and NYSE, and the name change to FINRA, the NASD
     Code currently applies to arbitration proceedings before FINRA.
25   [5] Likewise, the previously operative plan attached to Thaning's Complaint also mandated
     arbitration as follows:  "**Arbitration.**  Subject to exhaustion of the procedures specified in
26   Sections 11.1 through 11.3 hereof, in the event of any dispute, claim or controversy involving a
     Participant or any other claimant and the Plan, or PaineWebber or any Sponsor, arising out of the
27   Plan, any such controversy shall be resolved before a NASD arbitration panel in accordance with
     the arbitration rules of the NASD."  (Complaint, Ex. B.)
28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY
PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1  the clam and any defenses to the arbitrator." *Chiron Corp v. Ortho Diagnostic Sys., Inc.,* 207 F.

2  3d 1126, 1130 (9th Cir. 2000) (citing *Republic of Nicaragua v. Standard Fruit Co.*, 937 F. 2d

3  469, 478 (9th Cir. 1991)).  Courts have repeatedly declared that the FAA creates a "liberal

4  federal policy favoring arbitration agreements," and have consistently required that "any doubts

5  concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H.*

6  *Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Commercial Union*

7  *Ins. Co. v. Gilbane Bldg. Co.*, 992 F.2d 386, 388 (1st Cir. 1993) (strong federal policy requires

8  courts to resolve doubts in favor of arbitration).

9       **B.**      **Courts Have Already Concluded That The Form U-4 At Issue Is A Valid**
10                       **Agreement To Arbitrate.**

11       "[I]t is well settled that disputes between a member of a national stock exchange

12  and its employees are governed by the FAA where there is a binding arbitration agreement."

13  *Cione v. Foresters Equity Servs.*, 58 Cal. App. 4th 625, 633-634 (1997).  Courts have long found

14  that execution of a Form U-4 constitutes a valid arbitration agreement.  *See Kuehner v.*

15  *Dickinson & Co.*, 84 F.3d 316, 318, 321 (9th Cir. 1996) (affirming lower court's decision to

16  compel arbitration based on execution of Form U-4); *McManus v. CIBC World Markets*, 109

17  Cal. App. 4th 76, 88 (2003); *Cione*, 58 Cal. App. 4th at 634-35; *Brookwood v. Bank of America*,

18  45 Cal. App. 4th 1667, 1672, 1676 (1996); *Spellman v. Securities, Annuities & Insurance*

19  *Services*, 8 Cal. App. 4th 452, 464 (1992); *Baker v. Aubrey*, 216 Cal. App. 3d 1259, 1262, 1266

20  (1989) (construing a Form U-4 with language identical to the language quoted above in

21  Thaning's U-4 and finding that "[t]he broad language of the arbitration agreement here and the

22  strong federal policy favoring arbitration mandate the arbitrability of [plaintiff's] claim.").

23  Accordingly, arbitration of employment-related claims pursuant to the Form U-4 is routinely

24  ordered by courts.  *See Cione,* 58 Cal. App. 4th at 633-634 (relying on former employee's

25  executed U-4 agreement to compel arbitration of employment claims).

26       **C.**      **All Of The Claims Alleged By Plaintiff Are Subject To Arbitration.**

27       Plaintiff's Complaint alleges state law claims for breach of contract (third cause

28  of action), breach of implied covenant of good faith and fair dealing (fourth cause of action), and

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY
PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1  fraud (sixth cause of action).  Each of these claims is subject to arbitration.  *See Spellman*, 8 Cal.

2  App. 4th at 456 (1992) (compelling arbitration under U-4 for breach of contract and breach of

3  implied covenant of good faith and fair dealing); *see also O'Donnell v. First Investors Corp.*,

4  872 F. Supp. 1274, 1276 (S.D.N.Y. 1995) (compelling arbitration under U-4 of former

5  employee's claims for (i) fraudulent misrepresentation, (ii) interference with contract, (iii) breach

6  of employment and (iv) breach of good faith).

7           Plaintiff also alleges three causes of action under the Employee Retirement

8  Income Security Act ("ERISA"), 29 U.S.C. § 1132.  Courts have held that the FAA requires

9  enforcement of an otherwise valid arbitration agreement for statutory ERISA claims.  *Fabian*

10  *Fin. Svcs. v. Kurt H. Volk, Inc. Profit Sharing Plan,* 768 F. Supp. 728, 733-34 (C.D. Cal. 1991).

11  Specifically,

12           Congress did not intend to preclude a waiver of a judicial forum
              for statutory ERISA claims.  We further hold that the FAA
13           [Federal Arbitration Act] requires courts to enforce agreements to
              arbitrate such claims.
14

15  *Id.* at 734 (quoting and citing *Bird v. Shearson Lehman/Am. Express*, 926 F.2d 116, 122 (2d Cir.

16  1991); *see also Williams v. Imhoff*, 203 F.3d 758, 767 (10th Cir. 2000); *Kramer v. Smith Barney,*

17  *Inc.*, 80 F.3d 1080, 1084 (5th Cir. 1996); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,

18  7 F.3d 1110, 1116 (3d Cir. 1993); *Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc.*, 847 F.2d

19  475, 479 (8th Cir. 1988).  Ninth Circuit case law limiting the arbitrability of statutory ERISA

20  claims does not apply.  *Comer v. Micor, Inc.* 436 F.3d 1098, 1100 (9th Cir. 2006).  In *Comer*, the

21  Court remarked that, although in the past it had "expressed skepticism about the arbitrability of

22  ERISA claims", any such doubts "have been put to rest" by the Supreme Court's subsequent

23  holdings that statutory claims are arbitrable under the FAA.  *Id.* (citing *Shearson/American*

24  *Express Inc. v. McMahon,* 482 U.S. 220, 226 (1987) and *Rodriquez de Quijas v.*

25  *Shearson/American Express, Inc.*  490 U.S. 477, 481 (1989)).

26

27

28

1    **D.    This Action And All Proceedings Should Be Stayed Pending The Outcome Of The Arbitration.**

2

3    Once a Court determines that "any issue" in a suit before it is arbitrable under an

4    arbitration agreement, the FAA provides that the Court "shall on application of one of the parties

5    stay the trial of the action until such arbitration has been had in accordance with terms of the

6    agreement."  9 U.S.C. § 3; *see also Wagner v. Stratton Oakmont, Inc.,* 83 F.3d 1046, 1048 (9th

7    Cir. 1996).  Because the claims brought by Plaintiff are arbitrable, this entire action should be

8    stayed pending completion of arbitration between the parties.

9    Defendants, therefore, move the Court to compel arbitration and stay this entire

10    action pending arbitration.

11    DATED:  January 11, 2008                    Bingham McCutchen LLP

12

13

                                            By:_____/s/  Walter M. Stella_____
14                                                    Walter M. Stella
                                                    Attorneys for Defendants
15                                            UBS Financial Services Inc. (also sued as
                                            UBS/Paine Webber) and UBS PartnerPlus Plan
16                                                (erroneously sued as UBS/Paine Webber
                                                        Partner's Plus)
17

18

19

20

21

22

23

24

25

26

27

28

A/72373876.7                              8                    CASE NO.: 07-5528 MJJ