# EXHIBIT D

<u>**UBS PartnerPlus Plan for Financial Advisors**</u>
<u>**Plan Document**</u>
(As Amended and Restated effective January 1, 2004)

UBS Financial Services Inc., a corporation organized under the laws of the State of Delaware ("<u>UBS Financial Services</u>"), sponsors the "UBS PartnerPlus Plan for Financial Advisors," a wealth accumulation plan hereafter referred to as the "<u>Plan</u>," as amended and restated effective January 1, 2004, for the benefit of Participants and Beneficiaries (such terms, and other capitalized terms used in the Plan, are defined in Article XII below). The Plan, as amended and restated, reads as follows:

### Article I - Purpose of Plan

The purpose of the Plan is to retain and motivate certain Financial Advisors by providing enhanced financial awards to such Financial Advisors while employed with UBS Financial Services or any other Sponsor and permitting the voluntary deferral of current compensation for a fixed period of years under the provisions of this Plan. The Plan consists of two separate components intended to achieve the objectives indicated, as follows:

  (i)    Firm Contributions – an award, intended to recognize important contributions to the success of the Sponsor in a manner that will encourage Participants to remain in employment with the Sponsor and continue to contribute to the Sponsor's success.

  (ii)   Voluntary Contributions - a deferred compensation feature intended to facilitate the accumulation of wealth by Participants and to encourage Participants to remain in employment with the Sponsor through the voluntary deferral of current compensation for a fixed period of years.

The Plan is a deferred bonus and compensation plan pursuant to which a Participant may be credited with Firm Contributions and may make Voluntary Contributions, and, in both cases, may earn Turbo Interest or Market Interest on those Contributions under Article III, subject to the terms and conditions set forth herein. To the extent that any term or provision of the Plan could be read in a manner that would subject the Plan to ERISA, that term or provision shall be read and applied in a manner that causes the Plan not to be subject to ERISA.

### Article II - Participation in the Plan

**2.1**   <u>**Eligibility to Participate**</u>. Any individual (i) who is a Financial Advisor and who is a Recognition Club Member in the current Plan Year, based on the previous Performance Year's production, or (ii) who generated gross production at the Sponsor in the previous Performance Year in excess of a threshold specified by the Committee, or (iii) who is a newly hired Financial Advisor and credited with a Firm Contribution by the Committee, or (iv) who meets any other standards as set forth by the Committee and is credited with a Firm Contribution shall be eligible to participate in the Plan for the current Plan Year. For this purpose, participation commences

upon the crediting of a Firm Contribution. Other provisions of the Plan notwithstanding, a newly hired Financial Advisor who is eligible to participate in a Plan Year solely due to clause (iii) of the first sentence of this Section 2.1 shall not be eligible to make Voluntary Contributions in such Plan Year. An individual who is eligible to participate in a Plan Year solely due to clause (iv) of the first sentence of this Section 2.1 may or may not be eligible to make Voluntary Contributions in such Plan Year, in the sole discretion of the Committee. Participation in any Plan Year does not guarantee participation in a subsequent Plan Year. If, however, a Participant does not qualify for participation in a subsequent Plan Year, the Contributions previously credited to his/her Account will continue to accrue Interest and Vest according to the terms of the Plan. The Committee may specify or amend the eligibility requirements for any Plan Year as it deems appropriate, provided that no change in eligibility after commencement of a Plan Year shall render ineligible any Participant who already commenced participation for that Plan Year. An individual who is designated as eligible to participate shall only become a Participant upon the crediting of Contributions under the Plan to such Participant's Account.

**2.2    Entry Date.** Subject to the terms and conditions of the Plan, any Financial Advisor who satisfies the applicable eligibility requirements of Section 2.1 for the current Plan Year shall participate in the Plan for such Plan Year as follows:

    (i)    Firm Contributions will be credited automatically under the Plan.

    (ii)    Voluntary Contributions will commence upon completion and submission of a PartnerPlus Voluntary Contribution Election Agreement no later than the date designated by the Committee, in accordance with Section 3.1(b).

**2.3    Nonduplication of Benefits.** Other provisions of this Plan and the PartnerPlus Plan for Branch Managers notwithstanding, the benefits of Financial Advisors shall be coordinated with the PartnerPlus Plan for Branch Managers so that Financial Advisors who are eligible for both this Plan and the PartnerPlus Plan for Branch Managers in a Plan Year shall only be entitled to receive benefits with respect to that Plan Year under the compensation arrangement they choose prior to the beginning of the Plan Year. Furthermore, if such a Financial Advisor elects to participate in the PartnerPlus Plan for Branch Managers for a Plan Year, he/she will not be eligible to participate in the award programs for Financial Advisors that generate Firm Contributions for that Plan Year.

Article III - Contributions and Interest

**3.1    Contributions.**

    (a) Firm Contributions. A Firm Contribution shall be credited to a Participant's Account in each Plan Year, beginning in 1996, if and to the extent that an award is made to such Participant by the Sponsor under a Deferred Award Program in effect for the immediately preceding Performance Year and, in 1995 only, as a result of Rollover Contributions. The calculation of the Firm Contribution for a given Performance Year shall be made under the applicable Deferred Award Program, as established by the Sponsor. Unless otherwise expressly provided in the applicable Deferred Award Program, an award that is treated as granted on December 31 of a given Performance Year shall be credited as a Firm Contribution under the

Plan as of January 1 of the following Plan Year. In addition, a Firm Contribution may be credited by the Committee to a Financial Advisor in connection with the hiring of such Financial Advisor. In such case, the Committee will specify terms and conditions applicable to such Firm Contribution, including Vesting requirements, which may vary from the terms and conditions set forth in the Plan.

(b) <u>Voluntary Contributions</u>. Voluntary Contributions shall be credited to a Participant's Account if elected by the Participant as follows:

(i)    Each Plan Year, a Participant (other than a newly hired Financial Advisor who is not eligible to make Voluntary Contributions, as set forth in Section 2.1) may elect to defer a portion of his/her compensation as a Voluntary Contribution in an amount up to 50% of the Firm Contribution credited to such Participant's Account in that Plan Year, <u>provided</u> that a Participant's Voluntary Contribution for any Plan Year after 1998, when added to the Participant's Firm Contribution credited in that Plan Year, shall not exceed $100,000. Participants must elect to defer a minimum of $500. The components of a Participant's compensation available for Voluntary Contributions will be specified by the Committee. Unless otherwise specified in, or specified by the plan administrator under, a plan of a Sponsor, Voluntary Contributions will not constitute a reduction in the Participant's compensation for purposes of (x) any plan of a Sponsor that is qualified under (i) Code Section 401(k), (ii) Code Section 125, or (iii) Code Section 132(f), (y) a Sponsor pension plan, or (z) any other plan of a Sponsor, and withdrawals by and distributions to a Participant under the Plan shall not constitute compensation to the Participant for purposes of any such plan qualified under Code Section 401(k), Code Section 125, or Code Section 132(f), or of any Sponsor pension plan, or other plan of a Sponsor.

(ii)   No Voluntary Contribution shall be made unless the Participant has executed and filed with the Committee a PartnerPlus Voluntary Contribution Election Agreement prior to the beginning of the Plan Year in which the Voluntary Contribution is to be made; <u>provided</u>, <u>however</u>, that if a Financial Advisor's eligibility to participate is not established in time for such person to make such election prior to the beginning of the Plan Year, such person may execute and file with the Committee a PartnerPlus Voluntary Contribution Election Agreement for the Plan Year within 30 days after receipt of the form of such Agreement, which election shall provide for payroll deductions from compensation only for services performed in that portion of the Plan Year following the date of such election (subject to the same maximum limitation as would have applied had the election been made prior to the beginning of the Plan Year). The Committee may deem an election by a Participant to be a continuing election for later Plan Years, except to the extent the Participant subsequently changes or modifies the election. Any election to change the amount deferred as a Voluntary Contribution shall not be effective until the Plan Year following the Plan Year in which the Participant executes and files with the Committee the form designated by it for changing the amount of the Voluntary Contribution, unless otherwise determined by the

Committee, and in any event such election shall apply only to payroll deductions from compensation for services performed following the date of such election.

(iii)     Voluntary Contributions shall be by payroll deductions commencing in the Plan Year in a payroll period specified by the Committee, and each such payroll deduction shall be substantially equal in that payroll period and each remaining payroll period in the Plan Year. If, however, during any payroll period a Participant has insufficient compensation to contribute the specified payroll deduction amount, any shortfall in payroll deductions will be deducted from the Participant's subsequent production checks to the extent compensation is available for contributions and otherwise in such amounts and manner as may be determined by the Committee; provided, however, that, if such adjustments are insufficient to make up in full for the shortfall in a given Plan Year, such Participant's Voluntary Contribution for the Plan Year shall be reduced by any remaining amount of the payroll deduction shortfall for the Plan Year.

(iv)     Unless otherwise determined by the Committee, a Participant's Voluntary Contributions will be discontinued as promptly as practicable following the notification to the Committee that the Participant has suffered a Disability.

## 3.2     Interest.

(a) Turbo Interest. Turbo Interest shall be credited monthly and compounded annually on Contributions, subject to the terms of this Section 3.2(a). The interest rate for the crediting of Turbo Interest applicable to Contributions credited in any Plan Year shall be set January 31st of that Plan Year (in the amount specified in the next sentence) and shall remain fixed for so long as Turbo Interest is to be credited on such Contributions. The Turbo Interest rate shall equal four times the Market Interest rate in effect as of the applicable January 31st (i.e., four times the average daily UBS Short-Term Cost of Funds rate for the applicable month of January); however, in no instance shall the rate exceed 32%. Turbo Interest shall commence to be credited from the date Firm Contributions are credited under the Plan and from the first day of the month during which Voluntary Contributions are credited under the Plan, and such Turbo Interest shall cease to be credited and cease to compound at the close of business on the earliest of (i) the last day of the forty-eighth (48th) month since the commencement of crediting of Turbo Interest on the Firm or Voluntary Contribution, (ii) the nearest Valuation Date coinciding with or following the date of the Participant's Separation From Service, and (iii) in respect of any Contribution withdrawn under Section 5.1 (b) or (c), the Valuation Date as of which the Participant's withdrawal becomes effective; provided, however, that no Turbo Interest will be credited in respect of any forfeited Contribution or compounded in respect of any forfeited Turbo Interest.

(b) Market Interest. Market Interest shall be credited monthly and compounded annually on Contributions and on Turbo Interest, subject to the terms of this Section 3.2(b). The applicable interest rate for the crediting of Market Interest shall be determined monthly and shall equal the average daily UBS Short-Term Cost of Funds rate for the applicable month; provided, however, that in no instance shall such rate exceed 8%. Market Interest shall commence to be credited on a Participant's Contributions originally credited in a given Plan Year (or given month of a Plan Year) and on Turbo Interest thereon the day after Turbo Interest ceases to be credited

on such Contributions, and such Market Interest shall cease to be credited and shall cease to compound in respect of any Contribution and Turbo Interest thereon (i) at the Valuation Date as of which the Participant's withdrawal or distribution of such Contribution and Interest (including distribution of an installment under Section 6.2, to the extent of such installment) becomes effective, and (ii) in the event of the Participant's Separation From Service for any reason other than a Qualifying Separation, at the close of business on the nearest Valuation Date coinciding with or following the date of such Separation From Service; provided, however, that Market Interest shall not commence to be credited if it would immediately cease to be credited under this Section 3.2(b), and in no event shall Market Interest be credited in respect of any forfeited Contribution or compounded in respect of any forfeited Interest. For purposes of the Plan, Market Interest credited on Turbo Interest shall be deemed to relate to the original Contribution in respect of which such Turbo Interest was credited.

(c) A Participant may not simultaneously earn Turbo Interest and Market Interest on the same Contribution amount credited to the Participant's Account.

## 3.3    Election Agreement, Accounts, and Other Matters.

(a) Terms and Filing of PartnerPlus Voluntary Contribution Election Agreement. The Committee shall specify the form of the PartnerPlus Voluntary Contribution Election Agreement, and terms and conditions relating to the filing thereof (subject to Section 3.1). Unless otherwise determined by the Committee, the elections on such Agreement shall become irrevocable (i) for the first Plan Year commencing after the filing of the Agreement, and (ii) for any subsequent Plan Year to be governed by the Agreement on the date specified by the Committee as the deadline for the filing of a new Agreement governing such subsequent Plan Year.

(b) Accounts. Each Participant shall have an Account, which will include a Vested portion and an Unvested portion. The following items will be identified and accounted for in respect of each Plan Year (unless inapplicable in such year), as a cash amount, identifying the Vested and Unvested portions:

(i)     Firm Contributions, including Rollover Contributions resulting from the 1991-1994 Performance Years;

(ii)    Voluntary Contributions;

(iii)   Interest with respect to a given Plan Year's Contributions (including Interest resulting from compounding); and

(iv)    Such other items as the Committee deems appropriate.

(c) Effectiveness of Plan Terms. Contributions credited to a Participant's Account under the Plan during the 1995, 1996 and 1997 Plan Years were governed by the terms of the Plan then in effect. The terms of the Plan, as amended and restated effective January 1, 1998, and January 1, 2003, apply to transactions and other events under the Plan from the time of effectiveness of each respective amendment and restatement.

## Article IV - Vesting and Forfeiture

**4.1    Vesting.**

(a) <u>Voluntary Contributions.</u>  Each Participant shall at all times have a fully Vested interest in his/her Voluntary Contributions.

(b) <u>1995-1998 Firm Contributions, Interest Thereon and Interest on 1995-1998 Voluntary Contributions.</u>  Subject to Section 4.2, each Participant shall become Vested in the Firm Contributions credited to such Participant in Plan Years 1995, 1996, 1997 and 1998, Interest thereon (including post-1998 Interest) and Interest (including post-1998 Interest) on the Participant's Voluntary Contributions credited in Plan Years 1995, 1996, 1997 and 1998, at the earliest time and to the extent specified below, but only if the Participant has had no Separation From Service between the original date of crediting of such Firm Contributions and the time of such Vesting:

(i)    In the case of such a Firm Contribution, the date four years after the date of crediting of such Firm Contribution under the Plan, except that a Rollover Contribution will Vest at the date specified for vesting under the Deferred Award Program from which the Rollover Contribution resulted;

(ii)    In the case of Turbo Interest or Market Interest relating to such a Firm Contribution, the date ten years after the date of crediting of such Contribution under the Plan;

(iii)    In the case of Turbo Interest or Market Interest relating to such a Voluntary Contribution, on July 1 of the tenth year after the Plan Year of crediting of such Contribution (e.g., July 1, 2008 in the case of Voluntary Contributions credited at any time in 1998); and

(iv)    In the case of any such Contribution or Interest, upon the Qualifying Separation (death, Disability or a retirement which is a Qualifying Separation, subject to the requirement of a Separation Agreement under Section 4.3) of the Participant.

The foregoing notwithstanding, the Committee may designate specific types of Firm Contributions for 1998 as Firm Contributions which will be subject to Vesting in accordance with Section 4.1(c) rather than this Section 4.1(b).

(c) <u>Post-1998 Firm Contributions, Interest Thereon and Interest on Post-1998 Voluntary Contributions.</u>  Subject to Section 4.2, each Participant shall become Vested in the Firm Contributions credited to such Participant's Account in Plan Years after 1998 (i.e., beginning with any Firm Contribution credited in the 1999 Plan Year on January 1, 1999), Interest thereon, and Interest on the Participant's Voluntary Contributions credited to such Participant's Account in Plan Years after 1998 at the earliest time and to the extent specified below, but only if the Participant has had no Separation From Service between the original date of crediting of such

Firm Contributions and the time of such Vesting (or, in the case of (iii) below, the time of such Qualifying Separation):

(i)    A portion of such Firm Contributions credited in a specified Plan Year, and Interest thereon, shall Vest as follows:

| Anniversary of the date such Firm Contribution was originally credited | Cumulative Percentage of Firm Contributions and Interest thereon Vested at that date |
|---|---|
| Sixth | 20% |
| Seventh | 40% |
| Eighth | 60% |
| Ninth | 80% |
| Tenth | 100% |

(ii)    A portion of the Turbo Interest and Market Interest relating to such Voluntary Contributions shall Vest as follows:

| July 1 of Year in which Occurs Indicated Anniversary of the date such Voluntary Contribution was originally credited | Cumulative Percentage of Interest on Voluntary Contributions Vested at that date |
|---|---|
| Sixth | 20% |
| Seventh | 40% |
| Eighth | 60% |
| Ninth | 80% |
| Tenth | 100% |

(iii)    Subject to Section 4.1(d), in the case of any such Contribution or Interest, approximately eight weeks following a Qualifying Separation (death, Disability or attainment of age and length of service requirements that constitute a Qualifying Separation under Section 12.23, subject to the requirement of a Separation Agreement under Section 4.3) of the Participant, or as promptly as practicable thereafter.

In addition, any Firm Contributions for 1998 designated by the Committee in accordance with the last sentence of Section 4.1(b) shall be subject to Vesting in accordance with this Section 4.1(c).

(d) 45/15/10 Qualifying Separation for Post-2003 Firm Contributions, Interest Thereon and Interest on Post-2003 Voluntary Contributions. Notwithstanding Section 4.1(c)(iii), the

provisions of this Section 4.1(d) shall apply in the case of a Participant's Qualifying Separation under clause (iii) of Section 12.26 (i.e., a Participant's attainment of age 45 and crediting with both 15 Years of Service and 10 years since commencement of Participation in the Plan) (a "45/15/10 Qualifying Separation") with respect to Post-2003 Firm Contributions (i.e., beginning with any Firm Contribution credited in the 2004 Plan Year on January 1, 2004), Interest thereon and Interest on Post-2003 Voluntary Contributions. Following a 45/15/10 Qualifying Separation (subject to the requirement of a Separation Agreement under Section 4.3) of a Participant, and subject to the provisions of Section 4.2, each such Participant shall become Vested in the Firm Contributions credited to such Participant's Account in Plan Years after 2003, Interest thereon, and Interest on the Participant's Voluntary Contributions credited to such Participant's Account in Plan Years after 2003, at the times and in the amounts specified in Section 4.1(c)(i) and (ii), but only if the Participant has had no Separation From Service between the original date of crediting of such Firm Contributions and the time of such 45/15/10 Qualifying Separation. Notwithstanding the foregoing, a Participant shall not become Vested in Firm Contributions or Interest in accordance with this Section 4.1(d) unless such Participant executes a Separation Agreement in accordance with Section 4.3 at each time the Participant would otherwise become Vested in Firm Contributions and Interest thereon, and Interest relating to Voluntary Contributions (i.e., upon each of the sixth, seventh, eighth, ninth and tenth anniversaries following the date of the crediting of the applicable Firm Contributions and Interest thereon and Interest relating to Voluntary Contributions). Notwithstanding this Section 4.1(d), if following a 45/15/10 Qualifying Separation a Participant dies before he or she becomes Vested in any Firm Contributions or Interest, any Unvested Firm Contributions and Interest of the Participant shall Vest in accordance with, and subject to the requirements of, Sections 4.1(b)(iv) and 4.1(c)(iii), as applicable.

(e) Notwithstanding anything to the contrary in this Section 4.1, in no event shall any Firm Contribution or any Interest be deemed Vested in the event the Participant owes any obligations to the Sponsor, in which case such Firm Contributions and Interest shall be subject to adjustments as set forth in Section 10.5.

**4.2**

**Forfeiture**.

(a) Separation From Service. Upon a Participant's Separation From Service, all of the Participant's Firm Contributions and Interest that have not Vested at or before the time of such Separation From Service shall be forfeited unless such Separation From Service is a Qualifying Separation. In the event of a Separation From Service resulting from the Participant's death or Disability or which otherwise constitutes a Qualifying Separation (subject to Section 4.3) as provided in Sections 4.1(b)(iv) and 4.1(c)(iii) and subject to Section 4.1(d), the Accelerated Amount shall be payable approximately eight weeks following the Qualifying Separation or as promptly as practicable thereafter, but only if the Participant has had no Separation From Service for Cause as set forth in Section 4.2(d), and has not breached the Separation Agreement required by Section 4.3.

(b) Unvested Interest Upon Withdrawal of Vested Contributions. Upon a Participant's withdrawal of Vested Firm Contributions or Voluntary Contributions originally credited in the 1998 Plan Year or earlier Plan Years, Unvested Interest on the withdrawn Contributions shall be forfeited to the extent specified in Section 5.1(a). Upon a Participant's withdrawal of Voluntary Contributions originally credited after the 1998 Plan Year, Unvested Interest on the withdrawn Voluntary Contributions shall be forfeited to the extent specified in Section 5.1(b).

(c) No Reinstatement of Forfeited Amounts. If a Participant has forfeited any Firm Contributions or Interest under the Plan, such forfeited amounts shall not be reinstated or recredited or otherwise affected by reason of the Participant being rehired by a Sponsor.

(d) Post-Termination Determination of Cause. If a Participant has a Separation From Service and the Committee thereafter determines that the Participant had engaged in conduct that would have warranted termination for Cause, the Participant shall forfeit his or her Accelerated Amount or, in the case of a 45/15/10 Qualifying Separation, any Unvested Firm Contributions and Interest. In such case, the Participant's Vested portion of the Participant's Account shall be limited to the amount that would have been Vested upon a termination for Cause. If UBS Financial Services or another Sponsor has made any distribution of an Accelerated Amount, or, in the case of a 45/15/10 Qualifying Separation, any amount that would be deemed not Vested pursuant to this Section 4.2(d), the Participant shall promptly repay such amount upon demand therefor, and UBS Financial Services shall have an affirmative right of recovery.

(e) 45/15/10 Qualifying Separation. In the case of a Separation From Service resulting from a Participant's 45/15/10 Qualifying Separation, if any Firm Contributions or Interest credited to such Participant's account are eligible to become Vested (in accordance with Section 4.1(d)) and do not become Vested, then all such Firm Contributions and Interest, and any other Unvested Firm Contributions and Unvested Interest credited to such Participant's Account, shall be forfeited.

**4.3    Separation Agreement**. A Participant's Separation From Service for reasons other than death or Disability will not qualify as a Qualifying Separation unless, in addition to meeting the other requirements set forth in the definition of Qualifying Separation, the Participant executes a Separation Agreement in accordance with this Section 4.3. The Separation Agreement shall be an agreement in a form satisfactory to the Sponsor executed not later than 30 days after the later

of the date of the Separation From Service or the date the Separation Agreement is mailed or otherwise delivered to the Participant. A Participant may be required to enter into a Separation Agreement on one or more occasions as set forth in Section 4.1(d). Without limiting the generality of the Sponsor's right to prescribe the terms and contents of such agreement, such agreement shall include, among other provisions, non-competition, non-solicitation and non-disclosure provisions, except as may otherwise be required by law, in the form approved from time to time by the Committee.

## Article V - Withdrawal Provisions

**5.1    Withdrawal of Contributions.**

(a) Withdrawals of Contributions Made in 1998 and Earlier Plan Years. With respect to Contributions originally credited in the 1998 Plan Year and earlier Plan Years, a Participant may withdraw amounts credited as Vested Firm Contributions and Voluntary Contributions from his or her Account by executing and filing with the Committee a PartnerPlus Withdrawal Form. A Participant's withdrawal shall become effective at the nearest Valuation Date coinciding with or following the date of filing of the Participant's PartnerPlus Withdrawal Form, and shall be paid to the Participant in accordance with Section 5.2. Unless otherwise determined by the Committee, withdrawals pursuant to this Section 5.1(a) shall be paid from amounts credited to a Participant's Account by Plan Year on a first in-first out basis, and within each Plan Year first from amounts credited as Voluntary Contributions and then from amounts credited as Vested Firm Contributions. Amounts credited as Unvested Firm Contributions and Unvested Interest relating to such Plan Years may not be withdrawn. Upon a withdrawal under this Section 5.1(a), all of the Unvested Interest on the withdrawn Contributions shall be forfeited.

(b) Withdrawals of Contributions Made in the 1999 Plan Year and Later Plan Years and Interest Thereon upon One Year's Notice. With respect to Contributions originally credited after the 1998 Plan Year and Interest thereon, a Participant may withdraw amounts credited as Vested Firm Contributions, Vested Interest thereon, Voluntary Contributions and Vested Interest thereon from his or her Account by executing and filing with the Committee a PartnerPlus Withdrawal Form at least one year prior to the effective date of the withdrawal; provided, however, that the Committee may specify a notice period of less than one year in specific cases. A Participant's withdrawal shall become effective at the nearest Valuation Date coinciding with or following the first anniversary of the filing of the Participant's PartnerPlus Withdrawal Form, and shall be paid to the Participant in accordance with Section 5.2. Unless otherwise determined by the Committee, withdrawals pursuant to this Section 5.1(b) shall be paid from amounts credited to a Participant's Account by Plan Year on a first in-first out basis, and within each Plan Year first from amounts credited as Voluntary Contributions and Vested Interest thereon (Voluntary Contributions withdrawn alone if no Interest is Vested thereon; otherwise, withdrawn simultaneously) and then from amounts credited as Vested Firm Contributions and Vested Interest thereon (withdrawn simultaneously). Amounts credited as Unvested Firm Contributions and Unvested Interest relating to such Plan Years may not be withdrawn. Upon a withdrawal of Voluntary Contributions under this Section 5.1(b), all of the Unvested Interest on the withdrawn Voluntary Contributions shall be forfeited. Amounts credited as Unvested Contributions not withdrawn and Unvested Interest not withdrawn and not forfeited shall continue to Vest and shall be otherwise unaffected by a withdrawal.

(c) Withdrawals by Certain Participants upon One Year's Notice. A Participant who has attained age 65 and is credited with five Years of Service may withdraw amounts credited as Vested Firm Contributions, Vested Interest thereon, Voluntary Contributions and Vested Interest thereon from his or her Account by executing and filing with the Committee a PartnerPlus Withdrawal Form at least one year prior to the effective date of the withdrawal; provided,

however, that the Committee may specify a notice period of less than one year in specific cases. A Participant's withdrawal shall become effective at the nearest Valuation Date coinciding with or following the first anniversary of the filing of the Participant's PartnerPlus Withdrawal Form, and shall be paid to the Participant in accordance with Section 5.2. Unless otherwise determined by the Committee, withdrawals pursuant to this Section 5.1(c) shall be paid from amounts credited to a Participant's Account by Plan Year on a first in-first out basis, and within each Plan Year first from amounts credited as Voluntary Contributions and Vested Interest thereon (Voluntary Contributions withdrawn alone if no Interest is Vested thereon; otherwise, withdrawn simultaneously) and then from amounts credited as Vested Firm Contributions and Vested Interest thereon (Firm Contributions withdrawn alone if no Interest is Vested thereon; otherwise, withdrawn simultaneously). Amounts credited as Unvested Firm Contributions and Unvested Interest may not be withdrawn, but such Unvested Contributions or Unvested Interest shall continue to Vest and shall be otherwise unaffected by the withdrawal.

(d) <u>Election of Amount and Type of Withdrawal</u>. A withdrawal under Section 5.1(a), (b), or (c) shall conform to such rules and regulations as may be specified by the Committee. A Participant may elect withdrawals specifically under Section 5.1(a), 5.1(b), or 5.1(c), or a combination thereof. In addition, a Participant may elect to withdraw amounts to the greatest extent possible by means of a withdrawal under Section 5.1(b), with any remaining amounts to be satisfied by means of a withdrawal under Section 5.1(a). Other provisions of this Section 5.1 notwithstanding, no right of a Participant to make a withdrawal is authorized under this Section 5.1 to the extent that such authorization would constitute constructive receipt of any amount credited to the Participant's Account prior to the actual withdrawal of such amount.

(e) <u>Voluntary Contributions Withdrawable Only After First Anniversary of Crediting</u>. Other provisions of this Section 5.1 notwithstanding, no Voluntary Contribution may be withdrawn if such Contribution was originally credited on a date one year or less prior to the withdrawal date, unless otherwise determined by the Committee.

**5.2    <u>Payment of Withdrawals</u>**. Withdrawals will be paid by check to the Participant approximately eight weeks following the effectiveness of the withdrawal, or as promptly as practicable thereafter.

## Article VI - Distributions

**6.1    <u>Scheduled In-Service Distribution</u>**.

(a) <u>Generally</u>. In the case of a Participant who, since the original date of crediting of Firm Contributions for a given Plan Year, has had no Separation From Service as of the Distribution Date specified under this Section 6.1, Vested Contributions and Vested Interest thereon then remaining credited to a Participant's Account in respect of such Plan Year will

become distributable to the Participant in a lump sum effective on the following Distribution Dates:

| Type of Account Credit | Distribution Date |
|---|---|
| Vested Firm Contributions and Vested Interest thereon | The tenth anniversary of the original date of crediting of such Firm Contributions |
| Voluntary Contributions and Vested Interest thereon | July 1 of the Plan Year in which falls the tenth anniversary of the original date of crediting of such Voluntary Contributions |

The amount of Contributions and Interest credits distributable under this Section 6.1 shall be determined as of the Valuation Date that coincides with the day preceding the Distribution Date or, if that day is not a Valuation Date, the nearest Valuation Date coinciding with or following the Distribution Date. A distribution under this Section 6.1 will be paid by check to the Participant approximately eight weeks following the Distribution Date, or as promptly as practicable thereafter. Thus, for example, the amount of Voluntary Contributions credited during the 1999 Plan Year and Vested Interest thereon remaining credited in a Participant's Account would have a Distribution Date of July 1, 2009, and the Participant should expect to receive a check for such amount approximately eight weeks later, or as promptly as practicable thereafter.

(b) Re-Deferred In-Service Distributions. Notwithstanding the foregoing and subject to Section 6.2, the Committee may permit Participants to elect to defer all or some of the Contributions and Interest becoming distributable under Section 6.1(a) into another plan sponsored by UBS or any of its subsidiaries. These deferrals shall be subject to the terms and conditions, including but not limited to, the eligibility requirements of the other plan and such other terms and conditions that may be set by the Committee.

## 6.2    Accelerated and Installment Distributions.

(a) Accelerated Distribution upon Separation for Any Reason. Notwithstanding the foregoing, subject to Section 6.2(b), if a Participant has a Separation From Service prior to the scheduled Distribution Date under Section 6.1, all Vested Contributions remaining credited to the Participant's Account at the date of such Separation From Service, and Vested Interest thereon credited through the Valuation Date coinciding with or next following the date of such Separation From Service, will become distributable to the Participant (or to the Participant's Beneficiary following his or her death) in a lump sum effective on that Valuation Date, which date shall be the Distribution Date. A distribution under this Section 6.2(a) will be paid by check to the Participant (or to the Participant's Beneficiary following his or her death) approximately eight weeks following the Distribution Date, or as promptly as practicable thereafter.

(b) Election to Receive Distribution in Installments. Notwithstanding the foregoing, including Section 6.1(a) above, (i) if a Participant has a Separation From Service due to a Qualifying Separation other than death or Disability or (ii) if such Participant has a scheduled in-service Distribution Date under Section 6.1(a) above, and provided that such Participant has

executed and filed with the Committee a PartnerPlus Installment Distribution Form at least one year prior to such Separation From Service or such Distribution Date (which Form remains in effect) electing distribution in installments under this Section 6.2(b) and subject to any terms and conditions that the Committee may determine, all Vested Contributions remaining credited to the Participant's Account at the date of such Separation From Service or such scheduled in-service Distribution Date and Vested Interest thereon may be distributed to the Participant in installments over (x) a period of up to ten years (paid in quarterly installments) in the event of a Qualifying Separation or (y) over a period of five years (paid in annual installments) in the event of a scheduled in-service Distribution Date, except as provided below in the event of the Participant's death. The effective date as of which each installment shall become payable shall be the final day of each calendar quarter or calendar year, as applicable (each being an "Installment Distribution Date"), beginning with the calendar quarter or calendar year, as applicable, in which (i) such Separation From Service occurred or (ii) the in-service Distribution Date was scheduled under Section 6.1(a). The amount of each such installment shall be determined as of the Valuation Date coinciding with such Installment Distribution Date, and shall be determined by dividing the remaining balance of Vested Contributions and Vested Interest credited to the Participant's Account as of such Valuation Date by the remaining number of quarterly or annual installments, as applicable; provided, however, that the Committee may determine to increase any installment in an amount sufficient to offset any withholding or employment related tax that arises at or near the initial Installment Distribution Date and which tax is not expected to recur at subsequent Installment Distribution Dates. During the period over which installments are paid until the Distribution Date for the final installment, Market Interest shall continue to accrue and be compounded in the Participant's Account in accordance with Section 3.2(b); such Market Interest shall be Vested upon crediting to the Participant's Account. The foregoing notwithstanding, in the event of death of a Participant who is entitled to installments under this Section 6.2(b), all Vested Contributions and Vested Interest thereon remaining credited to the Participant's Account at the Installment Distribution Date following the Committee's receipt of valid notice of the Participant's death will become distributable to the Participant's Beneficiary in a lump sum effective on that Installment Distribution Date. Each installment distributable under this Section 6.2(b) will be paid by check to the Participant or his or her Beneficiary approximately eight weeks following the Installment Distribution Date, or as promptly as practicable thereafter.

Notwithstanding anything in the Plan to the contrary, in the event that a Participant who is entitled to receive installment payments due to a Qualifying Separation other than Disability is rehired by a Sponsor under circumstances that the Committee, in its absolute discretion, determines results in a significant change in the Participant's status, the Committee may determine that such Participant shall be considered to have incurred a Separation From Service without rehire.

### Article VII - Distributions to Beneficiary

**7.1    Designation of Beneficiary.** Each Participant shall be entitled to designate one or more individuals on a form acceptable by the Committee, to receive benefits payable under this Plan in the event of the Participant's death. In the event that a Participant has designated more than one person (jointly) without specifying the percentage interest for each person, then each such person shall have the same percentage interest. If a Participant designates more than one person as a

Beneficiary without specifying whether they are to be joint or successive Beneficiaries, they will be deemed to be joint Beneficiaries. If no Beneficiary is designated, the Participant's Beneficiary shall be deemed to be the Participant's spouse (in the event the Participant is married), the Participant's registered domestic partner (in the event that the Participant notifies the Sponsor, in writing, of the domestic partnership, and such domestic partnership is recognized by law in the Participant's state or locality of domicile), or the Participant's estate (in the event the Participant is not married and does not have a registered domestic partner). Upon the acceptance by the Committee of a new Beneficiary designation, all Beneficiary designations previously filed shall be canceled in their entirety and deemed revoked. The Committee shall be entitled to rely on the last Beneficiary designation filed by the Participant, and accepted by the Committee prior to his or her death. If a Beneficiary survives the Participant and dies before receiving all other distributions payable to such Beneficiary, then any remaining balance of the Account shall be paid to the estate of the Beneficiary in a single lump sum.

**7.2    Distributions**. Upon the death of a Participant prior to distribution of all of the Vested portion credited to his/her Account, the unpaid balance of such Vested portion credited to the Account shall be paid to the Participant's Beneficiary in accordance with Section 6.2.

## Article VIII - Plan Administration

**8.1    Powers and Duties of Committee**. The Committee shall have sole and absolute discretion with respect to the operation, interpretation and administration of the Plan. The Committee's powers and duties shall include, but not be limited to:

    (i)    Determining eligibility for participation and entitlement to benefits under the Plan, including determinations with respect to Disability and Cause;

    (ii)    Making any and all factual determinations necessary or advisable for the implementation or administration of the Plan or the calculation of benefits thereunder;

    (iii)    Adopting, interpreting, altering, amending or revoking rules and regulations necessary to administer the Plan;

    (iv)    Delegating ministerial duties and employing outside professionals as may be required;

    (v)    Entering into agreements on behalf of the Sponsor as are necessary to implement the Plan; and

    (vi)    Permitting the accelerating of Vesting in individual cases in its sole and exclusive discretion except as set forth in Section 9.4.

Participants in the Plan shall not be eligible to serve on the Committee.

## Article IX - Amendment, Termination and Change in Control

**9.1      Amendment**.  UBS Financial Services shall have the right to amend the Plan, in whole or in part, at any time.  Such amendments could include, but are not limited to, changes in terms, thresholds and plan design, or the suspension of further crediting of Contributions and/or further crediting of Interest.  Any amendment to the Plan may be made by the Board of Directors of UBS Financial Services (the "Board") or any officer of UBS Financial Services who has been delegated the authority to amend the Plan.  Notwithstanding the foregoing, any amendment to the Plan which (i) is necessary or advisable to effect changes approved by the Board, (ii) makes changes required by applicable law, (iii) adopts technical or clarifying amendments or (iv) does not in any significant respect increase benefits or cost to UBS Financial Services may be made by any officer of UBS Financial Services.

**9.2      Termination**.  UBS Financial Services in its discretion may terminate the Plan or otherwise provide for the winding up and termination of the Plan.  In the event UBS Financial Services determines to terminate the Plan, all further Firm Contributions, Voluntary Contributions, Turbo Interest and Market Interest shall cease at the time of such determination or such later date as may be specified by UBS Financial Services, and each Participant shall receive a distribution of the Vested portion credited to his or her Account at that time or such later date as may be specified by UBS Financial Services.  Subject to Section 9.3, the Committee shall determine whether the Unvested portion credited to the Participant's Account (including Unvested Contributions and Interest) shall become Vested on the same terms as would have applied had the Plan not been terminated or shall become Vested on an accelerated basis, and shall determine the time or times at which such portion shall be distributed.  In the event of any delay between the date as of which Interest ceases to be credited in accordance with this Section 9.2 and Accounts are distributed, the Committee may determine whether to credit interest and, if so, the rate of interest to be credited, on Account balances to be distributed.

**9.3      No Reduction of Benefit**.  No action to amend, suspend or terminate the Plan shall reduce the amount of a Participant's Vested or Unvested portion credited to his/her Account as of the date of the amendment, suspension or termination, provided that UBS Financial Services may determine the terms that shall otherwise apply to distributions and other transactions in respect of such Account following such amendment, suspension or termination.

**9.4      No Automatic Acceleration of Vesting Upon Change in Control**.  No automatic acceleration of Vesting or distribution will occur upon a change in control of UBS or UBS Financial Services, although the Group Executive Board of UBS (the "Group Executive Board") may determine to accelerate Vesting or distribution in such case in its discretion.  The obligations of UBS Financial Services under this Plan with respect to amounts credited to a Participant's Account (whether Vested or Unvested) as of the date of any such change in control shall not be diminished in any way by such change, and such obligations shall attach to any successor entity resulting from any such change in control.  The Group Executive Board shall have the sole discretion to determine when and whether a change in control of UBS or UBS Financial Services has occurred.

**Article X - Miscellaneous**

**10.1    Limitation of Rights**.  No Participant or Beneficiary shall acquire any legal or equitable rights against UBS Financial Services or a Sponsor by reason of the Plan, except as expressly provided in the Plan.  No agreement between UBS Financial Services and any other Sponsor with respect to reimbursement of UBS Financial Services' costs under the Plan shall create any right to payment in the Participant or Beneficiary, as a third party beneficiary or otherwise, against any such other Sponsor.  Nothing contained herein requires the Sponsor to continue any Participant in its employ or requires any Participant to continue in the employ of the Sponsor.

**10.2    Unfunded Plan**.

(a) <u>General Creditor Status</u>.  The sole interest of each Participant and Beneficiary under the Plan is to receive the benefits provided herein as and when the distributions become due and payable in accordance with the terms of the Plan.  Participants and Beneficiaries shall have the status of general unsecured creditors with respect to benefits under the Plan, and the Plan constitutes a mere promise by UBS Financial Services to make benefit payments in the future.  Benefits payable to each Participant and Beneficiary under the Plan shall be solely the obligation of UBS Financial Services.  This Plan is intended to be unfunded for tax purposes.  UBS Financial Services may, however, establish a "rabbi" trust in respect of its obligations under the Plan so long as such trust is not inconsistent with the status of the Plan as unfunded.

(b) <u>Limitation of Participant Rights</u>.  Other provisions of the Plan and actions of the Committee under the Plan notwithstanding, no Participant shall have any right to withdraw Contributions or otherwise receive distributions under the Plan if and to the extent such right would result in the Participant being in "constructive receipt" of Contributions or Interest under the Plan at any time prior to the actual withdrawal or distribution of such amounts to the Participant.

**10.3    Inalienability**.  Except as required by an applicable law and subject to Section 10.4, a Participant's or Beneficiary's right to receive any payment under the Plan is not transferable except pursuant to the laws of descent and distribution or to a Beneficiary as expressly permitted under the Plan, and shall not be subject in any manner to anticipation, alienation, sale, assignment, pledge or encumbrance, nor to attachment, garnishment, levy, execution or other legal or equitable process by creditors of the Participant or the Participant's Beneficiary.

**10.4    Withholding**.  All payments under the Plan are subject to such withholding and to such other deductions as may be required under any income tax or other law, whether of the United States or any other jurisdiction, and, in the case of payments to the Beneficiary or estate of a Participant or Beneficiary, to the delivery to the Committee of such tax waivers, letters testamentary and other documents as the Committee may reasonably request.

**10.5    Adjustments**.  Notwithstanding anything herein to the contrary, at any time prior to distribution, the Sponsor in its sole discretion may make adjustments to some or all of any Firm Contributions and/or Interest for obligations owed by the Participant to the Sponsor, including, but not limited to, debts, fines, penalties, settlement amounts, tax withholdings, support staff expenses, transaction-related expenses, production deficits or other obligations incurred by the

Participant, or as a result of the Participant's failure to comply with the governing laws, and rules, regulations and policies of the applicable self-regulating organizations and UBS Financial Services or any other Sponsor. Without limiting the foregoing, adjustments shall include a reduction of any Firm Contribution and/or Interest with respect to any obligations which the Committee reasonably concludes are owed to the Sponsor by the Participant. Unless otherwise determined by the Committee, adjustments shall be made to a Participant's Account by Plan Year on a last in-first out basis. Within each Plan Year, adjustments shall be made first to Firm Contributions and Interest thereon and then to Interest on Voluntary Contributions.

**10.6    Payment to Representatives.**  If the Committee determines that a Participant or Beneficiary is legally incapable of giving valid receipt and discharge for the payment of distributions from the Plan, such distributions shall be paid to a duly appointed and acting guardian, if any. If no such guardian is appointed and acting, then the distributions shall be payable to such person designated by the Committee. Any payment to a representative under this Section 10.6 shall be a complete discharge of UBS Financial Services' obligation to pay such distribution.

**10.7    Indemnity of Committee.**  UBS Financial Services shall indemnify and hold harmless the Committee from and against any and all losses resulting from any liability to which the Committee may be subjected by reason of any act or conduct (except willful misconduct or gross negligence) in its official capacity in the administration of the Plan, including all expenses reasonably incurred in its defense, in case UBS Financial Services fails to provide such defense.

**10.8    Governing Law.**  The provisions applicable to the Plan shall be governed by the laws of the State of New York applicable to contracts made and to be performed within that State, without regard to principles of conflict of laws, and applicable provisions of Federal law.

### Article XI - Claims Procedure

**11.1    General.**  All claims for benefits under this Plan must be filed in writing with the Committee in accordance with such procedures as the Committee reasonably establishes. If any claim is wholly or partially denied, any challenge of such denial must be pursued in accordance with the arbitration provisions of Section 11.2.

**11.2    Arbitration.**  Subject to exhaustion of the procedures set forth in Section 11.1, in the event of any dispute, claim or controversy involving a Participant or any other claimant and the Plan, or UBS Financial Services or any Sponsor, arising out of the Plan, any such controversy shall be resolved before an NASD arbitration panel in accordance with the arbitration rules of the NASD.

### Article XII - Definitions

Wherever used in this document, the following terms shall have the meanings set forth in this Article, unless otherwise required by the context.

**12.1    Accelerated Amount** shall mean the Unvested portion of a Participant's Account, if any, subject to adjustments made by the Sponsor as described in Section 10.5, that will be paid as a result of the Participant's Qualifying Separation pursuant to Sections 4.1(b)(iv) and 4.1(c)(iii).

**12.2**    **Account** shall mean, with respect to each Participant, a bookkeeping account established and maintained by UBS Financial Services to record the amount of cash allocable to a Participant as a result of the Participant's Firm Contributions, Voluntary Contributions, Turbo Interest and Market Interest. Each Account may have a portion which is Vested and a portion which is Unvested. Accounts shall be maintained solely as bookkeeping entries to evidence unfunded, non-transferable obligations of UBS Financial Services.

**12.3** · **Beneficiary** shall mean the person (or persons) or entity (or entities) entitled to receive distributions under the Plan as a result of a Participant's death as determined under Article VII.

· **12.4**    **Board** shall mean the Board of Directors of UBS Financial Services.

**12.5**    **Cause** shall mean (i) the failure by the Participant to act in accordance with the policies and procedures of the Sponsor (including, without limiting the generality of the foregoing, the Code of Conduct) in effect from time to time, (ii) the violation by the Participant of any provision of the constitution, by-laws, rules or regulations of any securities, commodities or insurance exchange or association of which the Sponsor is a member, (iii) any material misrepresentation, inaccuracy or omission in any oral or written statement made by the Participant to the Sponsor or contained in any document furnished by the Participant to the Sponsor relating to the Participant's production levels, customer base, the terms of any prior employment or the reasons for the termination thereof or involving the Participant's reputation, fitness or character, in each case which, in the Sponsor's sole judgment, would have affected the Sponsor's decision to employ the Participant or as to the terms or conditions (including, without limitation the compensation of the Participant) of the Participant's employment, or (iv) the Participant being charged by any government, governmental authority, or administrative tribunal with (x) any crime or offense involving money, securities or other property of the Sponsor or any customer or client of the Sponsor, or involving transactions effected on any organized securities exchange or (y) any other crime or offense (whether or not involving the Sponsor) that, if the Participant were convicted, would constitute a felony under the laws, ordinances or regulations of the United States, New York State or the State in which the Participant is principally employed at the time his/her employment is terminated.

**12.6**    **Code** shall mean the Internal Revenue Code of 1986, as amended from time to time, including regulations thereunder and successor provisions and regulations thereto.

· **12.7**    **Committee** shall mean a committee of one or more persons appointed by UBS Financial Services to administer the Plan. ·

**12.8**    **Contributions** shall mean amounts credited as Firm Contributions and Voluntary Contributions.

**12.9**    **Deferred Award Program** shall mean the program(s), individually or collectively, designated by the Sponsor from time to time under which annual deferred awards are granted to Financial Advisors, as such programs may be amended from time to time.

**12.10**    **Disability** shall mean any physical or mental injury or disorder which (a) precludes the continued employment of the Participant and (b) (i) makes the Participant eligible for, and the Participant actually receives, disability benefits under the Social Security Act, (ii) makes the

Participant eligible for, and the Participant actually receives, disability benefits under the UBS Financial Services Long-Term Disability Plan or the UBS Financial Services Executive Long-Term Disability Plan, or (iii) in the event the Participant does not participate in the UBS Financial Services Long-Term Disability Plan or the UBS Financial Services Executive Long-Term Disability Plan, would make the Participant eligible for, and the Participant would actually receive, disability benefits under either of those plans had the Participant been a participant thereunder.

**12.11  Distribution Date** shall mean the date as of which a distribution under Section 6.1 or 6.2 shall become payable.

**12.12  ERISA** shall mean the Employee Retirement Income Security Act of 1974, as amended, and any rules or regulations promulgated thereunder.

**12.13  Exchange Act** shall mean the Securities Exchange Act of 1934, as amended from time to time, including rules thereunder and successor provisions and rules thereto.

**12.14  Financial Advisor** shall mean an individual in that employment classification as determined under established personnel and registration procedures of the Sponsor.

**12.15  Firm Contribution** shall mean the amount credited under the Plan in respect of a given Participant pursuant to Section 3.1(a) hereof (subject to adjustment pursuant to Section 10.5 hereof) and the Rollover Contributions credited to a Participant's Account as of January 1, 1995. Interest on Firm Contributions does not constitute part of the Firm Contributions.

**12.16  Group Executive Board** shall mean the Group Executive Board of UBS.

**12.17  Interest** shall mean amounts credited as Turbo Interest and Market Interest.

**12.18  Market Interest** shall mean the deemed interest credited on Firm and Voluntary Contributions and previously credited Turbo Interest pursuant to Section 3.2(b) hereof (including the interest resulting from compounding).

**12.19  Participant** shall mean any Financial Advisor who has satisfied the eligibility provisions of Article II hereof. An individual will remain a Participant until his or her entire Account has been distributed, although he or she will not be entitled to make or receive any credits as Contributions with respect to any period of time during which he or she does not meet the eligibility provisions of Article II.

**12.20  PartnerPlus Voluntary Contribution Election Agreement** shall mean the agreement by which a Participant elects to make Voluntary Contributions.

**12.21  Performance Year** shall mean the calendar year in which a Participant's performance gives rise to an award under a Deferred Award Program, which award is then credited as a Firm Contribution on the first business day of the following year (which is also the first day of the next Plan Year). Thus, for example, a Firm Contribution in the 2003 Plan Year is credited as of January 1 of the Plan Year as a result of an award for the 2002 Performance Year.

**12.22  Plan Year** shall mean each twelve (12)-month period ending December 31.

**12.23  Qualifying Separation** shall mean a Participant's Separation From Service, other than a termination by the Sponsor for Cause, if such Separation From Service is due to death or Disability or if, at the time of such Separation From Service, the Participant (i) has attained age 65 and is credited with five Years of Service, (ii) has attained age 55 and is credited with 10 Years of Service, or (iii) has attained age 45 and is credited with both 15 Years of Service and 10 years since commencement of participation in the Plan (a "45/15/10 Qualifying Separation"), and in all cases (i.e., each of case (i), (ii), and (iii)) the Participant has entered into one or more Separation Agreements as required under Section 4.3.

**12.24  Recognition Club Member** shall mean any Financial Advisor who qualifies for a Recognition Club, as defined by the Sponsor and subject to the most current thresholds.

**12.25  Rollover Contribution** shall mean the cash amount automatically credited to a given Participant's account as of January 1, 1995 as a result of the one-time transfer of balances under the Deferred Award Programs resulting from grants in the 1991 - 1994 Performance Years, in accordance with the terms of the Plan as initially in effect.

**12.26  Separation Agreement** shall mean the agreement between the Sponsor and a Participant which must be entered into as a condition to (i) receiving an Accelerated Amount upon a Qualifying Separation other than due to a 45/15/10 Qualifying Separation, death or Disability, or (ii) becoming Vested in Firm Contributions and Interest in the case of a 45/15/10 Qualifying Separation, as set forth in Section 4.3 hereof.

**12.27  Separation From Service** shall mean a termination of a Participant's employment with a Sponsor for any reason immediately after which Participant is not employed by any other Sponsor; provided, however, that a Participant who has ceased performing his or her usual duties as a result of a physical or mental injury or disorder which then or thereafter constitutes a Disability shall be deemed, for purposes of the Plan, to have a Separation From Service only on the second anniversary of the date such injury or disorder occurred or commenced (as determined by the Committee), if the Participant remains subject to a Disability at that second anniversary date, except that the Committee may determine that the Participant who has suffered a Disability and whose employment has so terminated shall be deemed to have had a Separation From Service at a date earlier than that specified in this proviso.

**12.28  Sponsor** shall mean UBS Financial Services and any affiliate (i) which has adopted the Plan and (ii) whose participation in the Plan has been approved by the Board or the Committee. Each Sponsor who participates in the Plan shall be deemed to appoint UBS Financial Services and the Committee with all the power and authority conferred hereby upon such parties. Such power and authority to act as such agents for the Sponsor shall continue until the Plan is completely terminated as to the Sponsor. With respect to a given Participant, references to the Sponsor mean the Sponsor which employs the Participant, unless the context otherwise requires.

**12.29  Turbo Interest** shall mean the deemed interest credited on Firm and Voluntary Contributions in the form of cash pursuant to Section 3.2(a) (including interest resulting from compounding).

**12.30**  <u>UBS</u> shall mean UBS AG, an Aktiengesellschaft organized under the laws of Switzerland.

**12.31**  <u>UBS Financial Services</u> shall mean (i) prior to June 9, 2003, UBS PaineWebber Inc., a Delaware corporation and (ii) on or after June 9, 2003, UBS Financial Services Inc., a Delaware corporation or any corporation or entity which succeeds to all or substantially all its business.

**12.32**  <u>UBS Short-Term Cost of Funds</u> shall mean the offered rate of UBS's 30-day commercial paper averaged over the number of business days in the month.

**12.33**  <u>Unvested</u> shall mean a Participant's interest in amounts credited to his/her Account which has not become Vested and which therefore remains forfeitable and subject to adjustments, as described in Section 10.5.

**12.34**  <u>Valuation Date</u> shall mean the last day of each month, or such other date as may be specified by the Committee, as of which the value of a Participant's Account shall be determined.

**12.35**  <u>Vest (and Vested and Vesting)</u> shall mean a Participant's interest in amounts credited to his/her Account while such employee is continuously employed by the Sponsor which is not forfeitable; <u>provided</u>, <u>however</u>, notwithstanding anything to the contrary no amounts credited as Firm Contributions or Interest shall be deemed Vested in the event the Participant owes any obligations to the Sponsor, in which case such Firm Contributions and Interest shall be subject to adjustments, as set forth in Section 10.5.

**12.36**  <u>Voluntary Contributions</u> shall mean the amounts (i) which are deferred by a given Participant pursuant to Section 3.1 (b) hereof and (ii) which are not subject to adjustments as set forth in Section 10.5.  Interest on amounts credited as Voluntary Contributions does not constitute part of the Voluntary Contributions.

**12.37**  <u>Year of Service</u> shall mean a period of 365 days of continuous employment since the most recent hire date recorded for the Participant by the Sponsor and ending upon the Participant's Separation From Service with the Sponsor; <u>provided</u>, <u>however</u>, that the Committee may, in its discretion, adjust a Participant's Years of Service to give credit for prior employment by the Sponsor in the case of a Participant who is rehired by the Sponsor.

IN WITNESS WHEREOF, the undersigned duly authorized officers of UBS Financial Services Inc. hereby certify that this version of the PartnerPlus Plan for Financial Advisors, as amended and restated effective January 1, 2004, was in effect beginning January 1, 2004.

By: _Paul Greene_____

Paul Greene
Director, Branch Administration & Compensation

By: _____

Ron Safir
CAO, UBS WMUSA