# EXHIBIT 2

575 N.W.2d 593, *; 1998 Minn. App. LEXIS 277, **

Thomas W. Ottman, Appellant, vs. Wayne Fadden, et al., Respondents.

C6-97-1713

COURT OF APPEALS OF MINNESOTA

575 N.W.2d 593; 1998 Minn. App. LEXIS 277

March 10, 1998, Filed

**PRIOR HISTORY:** [**1] Hennepin County District Court. File No. 944095.

**DISPOSITION:** Affirmed.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellant stockbroker sought review of a decision of the Hennepin County District Court (Minnesota), which granted appellee former employer's motion to compel arbitration of the stockbroker's common law defamation claim. An arbitration panel subsequently denied the claim and directed the stockbroker to pay monies owed on a promissory note to the former employer. The trial court affirmed the arbitration award.

**OVERVIEW:** A stockbroker brought a common law defamation action against his former employer. The former employer then filed a motion to compel arbitration pursuant to the compulsory arbitration provision of the standard registration agreement of the securities industry. Based on a finding that allegedly defamatory internal memoranda were related to the stockbroker's professional status and job performance, the trial court granted the motion to compel arbitration. An arbitration panel then denied the stockbroker's claim and directed him to pay monies owed on a promissory note to the former employer. The trial court denied the stockbroker's motion to vacate the award, and the stockbroker appealed the order to compel arbitration. On review, the court affirmed. Specifically, the court held that the stockbroker's defamation claim arose out of his employment and was subject to the arbitration agreement. Moreover, the court ruled that the standard registration agreement was not a contract of adhesion, and thus, it constituted a valid waiver of the right to a trial by jury on claims arising out of employment or the termination of employment.

**OUTCOME:** The court affirmed the trial court's order to compel arbitration of the stockbroker's defamation claim against the former employer. In particular, the court held that because the stockbroker's claim arose out of his employment, it was subject to the parties' arbitration agreement and that the agreement constituted a valid waiver of the right to trial by jury on claims arising out of employment or the termination of employment.

**CORE TERMS:** arbitration, registration, defamation claim, agreement to arbitrate, stockbroker, securities industry, contract of adhesion, arbitration agreement, arbitrable, jury trial, post-termination, sophisticated, broker, Federal Arbitration Act, arbitration procedures, contract interpretation, termination of employment, manager, compelling arbitration, employment relationship, compulsory arbitration, arbitration panel, arbitration clause, arbitration process, compel arbitration, award of sanctions, job performance, right

to trial, agreed to arbitrate, bargaining power

**LEXISNEXIS(R) HEADNOTES**
Civil Procedure > Alternative Dispute Resolution > Validity of ADR Methods
Civil Procedure > Appeals > Standards of Review > De Novo Review
Contracts Law > Contract Interpretation > General Overview
HN1⬆ Whether a party has agreed to arbitrate a particular dispute is a matter of contract interpretation, which the court reviews de novo. The court resolves any doubts in favor of arbitration.

Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview
Civil Procedure > Alternative Dispute Resolution > Validity of ADR Methods
Contracts Law > Contract Conditions & Provisions > Arbitration Clauses
HN2⬆ A party can only be required to arbitrate disputes that it contractually agreed to submit to arbitration. An arbitration panel's authority to resolve disputes flows directly from the parties' arbitration agreement.

Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview
Securities Law > Regulation of Securities Markets > Registration & Regulation of Brokers & Dealers
Securities Law > Self-Regulating Entities > National Association of Securities Dealers
HN3⬆ The U-4 registration agreement of the securities industry provides for arbitration of "any dispute, claim, or controversy" if required under the National Association of Securities Dealers (NASD) or the New York Stock Exchange (NYSE) rules. Under either rule, controversies arising out of the employment or termination of employment shall be settled by arbitration. NASD Code of Arbitration Proc. §§ 1, 8 (a); NYSE R. 347.

Civil Procedure > Alternative Dispute Resolution > Mandatory ADR
Contracts Law > Contract Conditions & Provisions > Arbitration Clauses
Labor & Employment Law > Collective Bargaining & Labor Relations > Arbitration > General Overview
HN4⬆ Where proving the truth or falsity of an allegedly defamatory memorandum will require presentation of evidence integrally related to a former employee's performance as a stockbroker, his defamation claim arises out of his employment or termination of employment and, as such, falls within the scope of the arbitration provision of the U-4 registration agreement of the securities industry.

Civil Procedure > Alternative Dispute Resolution > Mandatory ADR
Civil Procedure > Alternative Dispute Resolution > Validity of ADR Methods
Torts > Intentional Torts > Defamation > General Overview
HN5⬆ A piece-meal interpretation that heavily relies on a judicial determination of each allegation of a defamation claim would defeat the purposes underlying an agreement to arbitrate.

Civil Procedure > Alternative Dispute Resolution > Mandatory ADR
Securities Law > Regulation of Securities Markets > Registration & Regulation of Brokers & Dealers
Torts > Intentional Torts > Defamation > General Overview
HN6⬆ A trial court correctly orders a stockbroker to submit his claim to arbitration where his post-resignation defamation claim "arises out of" the employment relationship.

Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview

Civil Procedure > Alternative Dispute Resolution > Validity of ADR Methods
Contracts Law > Types of Contracts > Adhesion Contracts
HN7± In determining whether an arbitration agreement constitutes an invalid contract of adhesion, the court examines the sophistication of the parties, the circumstances surrounding the execution of the agreement, and the burden arbitration places on the complaining party. There is a strong federal policy in favor of enforcing arbitration agreements. Mere inequality in bargaining power is an insufficient basis to invalidate an arbitration agreement.

Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview
Contracts Law > Types of Contracts > Adhesion Contracts
Labor & Employment Law > Collective Bargaining & Labor Relations > Arbitration > General Overview
HN8± The U-4 registration agreement of the securities industry does not constitute a "contract of adhesion" because the employee is a sophisticated individual dealing in a sophisticated industry, and the arbitration process places no disproportionate burden on him.

Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview
Civil Procedure > Trials > Jury Trials > Right to Jury Trial
Constitutional Law > Bill of Rights > Fundamental Rights > Criminal Process > Right to Jury Trial
HN9± The constitutional right to a jury trial may be waived by the parties' agreement.

Civil Procedure > Alternative Dispute Resolution > Arbitrations > Arbitrability
Civil Procedure > Alternative Dispute Resolution > Validity of ADR Methods
Securities Law > Regulation of Securities Markets > Registration & Regulation of Brokers & Dealers
HN10± The arbitration of security industry disputes does not favor brokerage firms because arbitrators are bound to apply the law.

Civil Procedure > Sanctions > Baseless Filings > General Overview
Civil Procedure > Appeals > Frivolous Appeals
HN11± Where the court finds no evidence that an appellant brought an appeal in bad faith, the court will decline to award sanctions.

**SYLLABUS**

A stockbroker's post-resignation defamation claim against an employer is subject to compulsory arbitration under a U-4 registration agreement if the claim arose out of the stockbroker's employment or termination of employment.

**COUNSEL:** Robert J. Tansey, Jr., Mark D. Wisser, Robins, Kaplan, Miller & Ciresi L.L.P., 2800 LaSalle Plaza, 800 LaSalle Avenue, Minneapolis, MN 55402 (for appellant).

Margaret K. Savage, Eric J. Rucker, Briggs & Morgan, P.A., 2400 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, and Ronald P. Kane, Michael A. Kraft, Gomberg Kane & Fischer, Ltd., 208 South LaSalle Street, Suite 1800, Chicago, IL 60604 (for respondents).

**JUDGES:** Considered and decided by Short, Presiding Judge, Amundson, Judge, and Harten, Judge.

**OPINION BY:** SHORT

**OPINION**

[*594] OPINION

**SHORT**, Judge

In a common law defamation action brought against a former employer, Thomas W. Ottman argues his claims have only a tenuous link to his employment and thus, are not subject to the compulsory arbitration provision of the securities industry standard U-4 registration agreement. Finding the employer's two allegedly defamatory [**2] internal memoranda related to Ottman's professional status and his performance as a stockbroker, the trial court granted the employer's motion to compel arbitration. Ottman filed his statement of claim with the National Association of Securities Dealers (NASD). The three-member arbitration panel unanimously denied Ottman's claim and directed Ottman to pay monies due on a promissory note to his employer. Ottman moved to vacate the award. The trial court denied Ottman's motion, and affirmed the NASD arbitration award.

On appeal from the trial court's order compelling arbitration, Ottman argues: (1) his defamation claim does not directly relate to job performance and thus, is not subject to arbitration; and in the alternative, (2) compelling arbitration violates his right to a jury trial. The employer requests sanctions on appeal.

**FACTS**

For many years, Ottman was employed as a stockbroker. On September 14, 1992, Ottman joined the Minneapolis office of Kemper Securities, Inc., n/k/a Everen Securities, Inc. Pursuant to federal law and industry custom, Ottman executed an Application for Securities Industry Registration or Transfer (U-4 registration agreement) to maintain his registered [**3] representative status. The executed U-4 registration agreement stated in relevant part that Ottman: transferred from Smith Barney in Rhinelander, Wisconsin; applied for registration with the NASD and New York Stock Exchange (NYSE); and agreed "to arbitrate any dispute, claim, or [*595] controversy that may arise between me and my firm" if required under NASD or NYSE rules.

On November 24, 1994, Ottman voluntarily resigned from Kemper to take a position with Dean Witter Reynolds Inc. On November 26, Ottman's former manager circulated an internal memorandum concerning Ottman's departure. That document contained statements, including: Ottman had "personal problems"; he "has significant financial problems"; he had exhibited "abnormal behavior"; and he "chose to slip away in the night". When Ottman learned of the internal memorandum, he demanded a retraction. The employer refused, then circulated a second internal memorandum, which accused Ottman of making "inappropriate comments about [Kemper] in his pursuit" of customers.

Ottman sued his former manager and Kemper (collectively "employer") for libel and defamation alleging the two internal memoranda: (a) led others to question Ottman's honesty, [**4] integrity, and honor; (b) subjected Ottman to public hatred, contempt, and ridicule; and (c) caused injury to Ottman's reputation and standing. Claiming all statements contained in the internal memoranda related to Ottman's professional status or performance, the former employer moved for arbitration under the executed U-4 registration agreement.

**ISSUES**

I. Does Ottman's defamation claim fall within the scope of the U-4 registration agreement?

II. Does compelling arbitration violate Ottman's right to a jury trial?

III. Is Ottman pursuing a baseless claim?

**ANALYSIS**

**HN1** Whether a party has agreed to arbitrate a particular dispute is a matter of contract interpretation, which we review de novo. *See Johnson v. Piper Jaffray, Inc.*, 530 N.W.2d 790, 795 (Minn. 1995) (agreement to arbitrate matter of contract interpretation); **Turner v. Alpha Phi Sorority House**, 276 N.W.2d 63, 66 (Minn. 1979) (contract interpretation subject to de novo review). We resolve any doubts in favor of arbitration. **See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.**, 460 U.S. 1, 24-25, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765 (1983) (holding any doubts **[**5]** concerning scope of arbitrable issues resolved in favor of arbitration); *see also* 9 U.S.C. §§ 1-15 (1988) (codifying Federal Arbitration Act); Minn. Stat. § 572.08 (1996) (providing written agreement to arbitrate valid, enforceable, and irrevocable except upon grounds existing at law or in equity for revocation of any contract); **Morgan v. Smith Barney, Harris Upham & Co.**, 729 F.2d 1163, 1165 (8th Cir. 1984) (concluding Federal Arbitration Act establishes statutory scheme for effectuating federal policy of encouraging arbitration; Peter H. Berge, **The Uniform Arbitration Act: A Restrospective on its Thirty-Fifth Anniversary**, 14 Hamline L. Rev. 301, 306-08 (1991) (detailing Minnesota's long held support for arbitration)

I.

**HN2** A party can only be required to arbitrate disputes that it contractually agreed to submit to arbitration. **AT & T Techs., Inc. v. Communications Workers of Am.**, 475 U.S. 643, 648, 106 S. Ct. 1415, 1418, 89 L. Ed. 2d 648 (1986). An arbitration panel's authority to resolve disputes flows directly from the parties' arbitration agreement. *Id.* at 648-49, 106 S. Ct. at 1418. **HN3** The U-4 registration agreement provides for **[**6]** arbitration of "any dispute, claim, or controversy" if required under NASD or NYSE rules. Under either rule, controversies "arising out of the employment or termination of employment" shall be settled by arbitration. NASD Code of Arbitration Procedure §§ 1, 8(a); NYSE R. 347; *see also* **Shearson/American Express, Inc. v. McMahon**, 482 U.S. 220, 234, 107 S. Ct. 2332, 2341, 96 L. Ed. 2d 185 (1987) (concluding SEC has specifically approved arbitration procedures of NASD and NYSE).

Ottman agrees he signed the U-4 registration agreement, but argues his defamation claim does not involve significant aspects of the employment relationship and is only tenuously linked to his employment. *See Atcas v. Credit Clearing Corp. of Am.*, 292 Minn. 334, 340-50, 197 N.W.2d 448, 452-57 (1972) (concluding no agreement to arbitrate **[*596]** exists because controversy not within scope of arbitration clause). We are asked to determine whether Ottman's defamation claim, as described in his complaint, falls within the scope of the U-4 registration agreement. *See Morgan*, 729 F.2d at 1167 (holding complaint allegations must be examined in light of parties' contractual terms); **[**7] *Johnson*, 530 N.W.2d at 795 (concluding determination of whether party agreed to arbitrate particular disputes is matter of contract interpretation).

The complaint alleges Ottman's former manager "acting within the scope of his employment" published a defamatory memorandum to employees one business day after Ottman quit his stockbroker job. It also alleges the memorandum and a subsequent inadequate "retraction

memorandum" held him up to ridicule and public contempt "in his profession as a stockbroker." Ottman argues those two memoranda have no "rational connection" to his employment, but simply reflect "emotional, unprofessional outbursts designed to further" a private agenda after Ottman was gone. However, a review of the two internal memoranda demonstrates: (a) the first memorandum provided notification of Ottman's resignation; and (b) the second memorandum provided direction to staff in dealing with Ottman's accounts. Even Ottman's counsel admitted, at oral argument, that the second memorandum concerns Ottman's customers and his job performance. HN4⯮Because proving the truth or falsity of the memoranda will require presentation of evidence integrally related to Ottman's performance [**8] as a broker, we conclude the defamation claim arises out of the employment or termination of employment and, as such, falls within the scope of the U-4 registration agreement. **Cf. Morgan**, 729 F.2d at 1168 (declining to compel arbitration of claim not implicating employee's performance as broker).

Ottman argues we should not look at the essence of his claim to determine arbitrability, but should review each statement in the two memoranda to determine whether the employer's conduct involves a "significant aspect of the employment relationship" or constitutes a "reckless character assassination." However, HN5⯮a piece-meal interpretation that heavily relies on a judicial determination of each allegation would defeat the purposes underlying an agreement to arbitrate. **See Great W. Mortgage Corp. v. Peacock**, 110 F.3d 222, 228 (3d Cir. 1997) (concluding court will conduct narrow inquiry under FAA in which it decides only if there is agreement to arbitrate and whether that agreement is valid), **cert. denied**, 139 L. Ed. 2d 230, 118 S. Ct. 299 (Oct. 14, 1997); **Prudential Sec. Inc. v. LaPlant**, 829 F. Supp. 1239, 1242 (D. Kan. 1993) (concluding central purpose [**9] of Federal Arbitration Act is to ensure judicial enforcement of privately made agreements to arbitrate and its second purpose is to encourage efficient and speedy resolution of disputes); see also Maynard E. Pirsig, **Some Comments on Arbitration Legislation and the Uniform Act**, 10 Vand. L. Rev. 685, 691 (1957) (stating purpose of arbitration law is to make agreement to arbitrate effective and to effectuate that purpose it enlists aid of court by simple non-technical and summary procedure that safeguards parties against claims for arbitration not warranted by their agreement).

Under these circumstances, HN6⯮the trial court correctly ordered Ottman to submit his claim to arbitration because his post-resignation defamation claim "arises out of" the employment relationship. **See, e.g., Fleck v. E.F. Hutton Group, Inc.**, 891 F.2d 1047, 1053 (2d Cir. 1989) (holding as arbitrable post-termination defamation claim based on statement that stockbroker was "basically a criminal"); **Zolezzi v. Dean Witter Reynolds, Inc.**, 789 F.2d 1447, 1448-50 (9th Cir. 1986) (holding as arbitrable post-termination defamation claim based on statement that stockbroker [**10] "would probably be out of the stock market business within a year, that [he] might end up in jail * * * was immoral and unethical * * * and would eventually lose his broker's license"); **Kauffman v. Chicago Corp.**, 187 Mich. App. 284, 466 N.W.2d 726, 730 (Mich. Ct. App. 1991) (holding as arbitrable post-termination defamation claim based on statement that stockbroker "had a drinking problem"); **Flanagan v. Prudential-Bache Sec., Inc.**, 67 N.Y.2d 500, 495 N.E.2d 345, 346-50, 504 N.Y.S.2d 82 (N.Y. 1986) (holding as arbitrable post-termination defamation claim based on letter sent to clients [*597] stating former stockbrokers were "on the road again * * * [and regretting] if their frequent moves have caused you inconvenience").

II.

In the alternative, Ottman argues the U-4 registration agreement is unenforceable because it constitutes an illegal contract of adhesion. **See Hauenstein & Bermeister, Inc. v. Met-Fab Indus., Inc.**, 320 N.W.2d 886, 891 (Minn. 1982) (concluding forum selection clauses in contract of adhesions are unreasonable, in part, because they are product of unequal bargaining power). HN7⯮In determining whether an arbitration agreement constitutes an

invalid contract of adhesion, [**11] we examine the sophistication of the parties, the circumstances surrounding the execution of the agreement, and the burden arbitration places on the complaining party. **Brown v. Merrill Lynch, Pierce, Fenner & Smith, Inc.**, 664 F. Supp. 969, 974 (E.D. Pa. 1987). There is a strong federal policy in favor of enforcing arbitration agreements. **Id.** Mere inequality in bargaining power is an insufficient basis to invalidate an arbitration agreement. **Gilmer v. Interstate/Johnson Lane Corp.**, 500 U.S. 20, 33, 111 S. Ct. 1647, 1655, 114 L. Ed. 2d 26 (1991).

It is undisputed Ottman is an experienced broker who has worked in the securities industry for years and has executed several U-4 registration agreements. In the course of the arbitration, Ottman was required to pay a non-refundable filing fee of $ 500, a hearing fee of $ 600, and a forum fee of $ 1,800. We conclude HN8 the U-4 registration agreement at issue does not constitute a "contract of adhesion" because Ottman is a sophisticated individual dealing in a sophisticated industry, and the arbitration process placed no disproportionate burden on him. **See Brown**, 664 F. Supp. at 974 (holding securities industry [**12] arbitration clause not a contract of adhesion where record shows employee sophisticated individual dealing in sophisticated industry, employee not coerced to sign U-4 registration agreement and no disproportionate burden placed on employee pursuant to clause); **Battle v. Prudential Ins. Co. of Am.**, 973 F. Supp. 861, 867 (D. Minn. 1997) (holding where plaintiff was successful sales person court not persuaded that plaintiff was coerced, defrauded, or was under duress because told to sign on "X" of Form U-4 without allegedly reading its contents, and valid agreement to arbitrate existed).

Ottman also argues the U-4 registration agreement is invalid because compulsory arbitration denies him the right to trial by jury, and places his claims before a panel of industry arbitrators. **See** U.S. Const. amend. VII (guaranteeing jury trial in suits of common law); Minn. Const. art. I, § 4 (providing right to trial by jury). **But see Rodriguez de Quijas v. Shearson/American Express, Inc.**, 490 U.S. 477, 481, 109 S. Ct. 1917, 1920, 104 L. Ed. 2d 526 (1989) (rejecting generalized attacks on arbitration that rest on suspicion of arbitration as method of weakening [**13] protections afforded in substantive law to would-be complainants). However, HN9 the constitutional right to a jury trial may be waived by the parties' agreement. **Northwest Airlines, Inc. v. Air Line Pilots Ass'n, Int'l**, 373 F.2d 136, 142 (8th Cir. 1967); see also **Shearson/American Express, Inc.**, 482 U.S. at 232, 107 S. Ct. at 2340 (concluding streamlined procedures of arbitration do not entail any consequential restriction on substantive rights); **Johnson**, 530 N.W.2d at 802-03 (rejecting plaintiff's claims that procedural deficiencies in securities industry arbitration process makes claims non-arbitrable). Moreover, HN10 the arbitration of security industry disputes does not favor brokerage firms because arbitrators are bound to apply the law. **Brown**, 664 F. Supp. at 974 (quoting **United Steelworkers v. Enterprise Wheel & Car Corp.**, 363 U.S. 593, 597, 80 S. Ct. 1358, 1361, 4 L. Ed. 2d 1424 (1960)); see also **Shearson/American Express, Inc.**, 482 U.S. at 233-34, 107 S. Ct. at 2341 (concluding SEC has broad authority to regulate rules adopted by national security exchanges and registered security associations, including power to mandate adoption [**14] of any rules to ensure arbitration procedures adequately protect statutory rights). Because Ottman signed the U-4 registration agreement, compulsory arbitration does not violate his right to a jury trial.

[*598] III.

The employer argues monetary sanctions should be imposed against Ottman because he "persists in advancing" legal positions not well grounded in fact or law. **See** Minn. Stat. § 549.21, subd. 2 (1996) (court may, in its discretion, award costs, including reasonable attorney fees, against party who acted in bad faith or asserted an unfounded position solely to delay course of proceedings), **repealed by** 1997 Minn. Laws ch. 213, art. 2, § 6; **Radloff v. First Am. Nat'l Bank**, 470 N.W.2d 154, 157 (Minn. App. 1991) (holding award of sanctions permissible where appellant asserted multiple baseless causes of action that

resulted in increased cost for all parties and distracted court's attention from any meritorious claims), *review denied* (Minn. July 24, 1991). *But see* Minn. Stat. § 549.211, subds. 2-3 (Supp. 1997) (providing for sanctions against parties who bring action for improper purpose, assert unwarranted or frivolous arguments, [**15] or allege factual contentions that lack evidentiary support). HN11 Because we find no evidence Ottman brought this appeal in bad faith, we decline to award sanctions. *See Uselman v. Uselman*, 464 N.W.2d 130, 141 (Minn. 1990) (holding error to award statutory sanctions where no evidence of bad faith and attorney did not assert frivolous claim or unfounded position for purposes of delay or harassment).

## DECISION

Ottman's post-resignation defamation claim arose out of his employment and is subject to the parties' arbitration agreement. A securities industry standard U-4 registration agreement is not a contract of adhesion, and constitutes a valid waiver of trial by jury for claims that arise out of employment or termination of employment. The former employee is not entitled to an award of sanctions on appeal.

Affirmed.

Service: **Get by LEXSEE®**
Citation: **575 n.w.2d 593**
View: Full
Date/Time: Friday, January 11, 2008 - 7:08 PM EST

* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

LexisNexis®   About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.