UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALVA GENE THANING,

    Plaintiff,

    v.

UBS/PAINE WEBBER, et al.,

    Defendants.
_____/

No. C 07-5528 PJH

**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAYING CASE**

On May 7, 2008, the court heard argument on defendants' motion to compel arbitration and for a stay pending arbitration. James Bridgman appeared for plaintiff and Walter Stella appeared for defendants. Having carefully reviewed the papers and the arguments of counsel, the court GRANTS the motions for the reasons stated at the hearing and set forth more fully below.

**BACKGROUND**

From December 1987 until January 19, 2005, plaintiff Alva Gene Thaning ("plaintiff") was employed as a financial and investment services advisor for defendant PaineWebber, Inc. and its successor corporation, UBS Financial Services ("defendants"). See Complaint, ¶ 2. While employed, plaintiff participated in defendants' retirement plans. He participated in Paine Webber Incorporated's retirement plan until July 27, 1999, at which point that plan was converted to the PaineWebber PartnerPlus plan ("PartnerPlus plan"), in which plaintiff participated until his termination on January 19, 2005. See id. at ¶¶ 4-5. Plaintiff alleges that the PartnerPlus plan is an ERISA employee benefit plan. Under the terms of the plan, plaintiff alleges that a participant is entitled to receive all of his personal contributions to the

plan (plus interest and dividends), as well as all vested firm contributions to the plan (plus interest and dividends), upon termination. See id. at ¶ 6.

On or about April 27, 2005, plaintiff duly received his personal contributions to the PartnerPlus plan. However, he has not received the vested firm contributions plus interest and dividends, which plaintiff alleges amount to $304,927.38, plus 10% interest per annum (from January 19, 2005). Id. at ¶ 8. Plaintiff now seeks to recover these contributions, plus interest and dividends. In addition, he is also alleging wrongful termination, because he claims that his discharge was "wholly or partially for the purpose of interfering with [p]laintiff's attainment of rights to which [p]laintiff would have become entitled to under the PartnerPlus plan had [p]laintiff continued to work to the age of seventy, as he had planned." Complaint, ¶ 16. Plaintiff seeks five years of lost commissions and firm contributions that would have vested, as well as punitive damages and attorneys' fees and costs. Id.

Specifically, plaintiff's complaint alleges 6 causes of action: (1) an ERISA claim for payment of vested firm contributions; (2) an ERISA claim for wrongful termination; (3) a breach of contract claim; (4) a claim for breach of the covenant of good faith and fair dealing; (5) a claim for breach of fiduciary duty; and (6) a claim for fraud and deceit. See Complaint, ¶¶ 17-53.

Defendant has now moved to compel arbitration, arguing that plaintiff executed an agreement with defendants in which he voluntarily agreed to arbitrate all the claims covered by his complaint.

**DISCUSSION**

Under § 4 of the Federal Arbitration Act ("FAA"), a district court must issue an order compelling arbitration if the following two-pronged test is satisfied: (1) a valid agreement to arbitrate exists; and (2) that agreement encompasses the dispute at issue. See United Computer Sys., Inc. v. AT&T Corp., 298 F.3d 756, 766 (9th Cir. 2002). Where neither of these prongs is met, the court must decide the issue. Moreover, it is the court who decides the issue of arbitrability, rather than the arbitrator. See 9 U.S.C. § 4.

Both requirements are met here. First, as defendants point out, a valid agreement to arbitrate exists, by way of Form U-4, which plaintiff executed on December 7, 1987. See O'Connell Decl., Ex. A. The form clearly contains an arbitration provision which states: "I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the organizations with which I register, as indicated in item 10...". See id. at p.4. While defendants are not mentioned on the form as plaintiff's designated "firm," plaintiff himself filled out item 10 and designated the following organizations as those with which plaintiff was registering: the NASD and the NYSE. See id. at p. 1.[1]

Turning next to the "rules, constitutions, or by-laws" of those organizations, the NASD Code of Arbitration Procedure for Industry Disputes (the "Code") provides: "a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and between or among: members; members and associated persons; or associated persons." See Defendants' Appendix of Select Authorities, Ex. 3. Plaintiff is associated with the NASD, as he reflected on Form U-4, and defendants are also members of the NASD, as made clear by ¶ 4 of the O'Connell declaration.[2] Accordingly, it is clear that a valid agreement to arbitrate exists between plaintiff and defendants, as they are both qualifying members and associated persons, under Form U-4 and the applicable "rules" of NASD, with which plaintiff registered on Form U-4.

Second, it is also clear that the agreement encompasses the dispute at issue. The dispute between the parties centers around plaintiff's allegedly wrongful termination, as well

---

[1] Plaintiff's argument that Form U-4 is unclear, is based on his simple mis-reading of the form, as item 10 *is* clearly mentioned and executed by plaintiff, on page 1 of the agreement.

[2] Defendant notes that the entities previously known as the NASD and the NYSE have now been consolidated, and are collectively called the Financial Industry Regulatory Authority ("FINRA"). See O'Connell Decl., ¶ 4.

3

1    as his claim for benefits under the PartnersPlus plan, upon his termination.  And once
2    again, defendants correctly cite Ninth Circuit authority holding that Form U-4 encompasses
3    employment termination suits between an NASD member and a former employee who
4    executed Form U-4.  See, e.g., Kuehner v. Dickinson & Co., 84 F.3d 316, 318 (9th Cir.
5    1996).  Additionally, there is non-controlling case law that supports arbitration of both
6    common law and ERISA claims (as plaintiff asserts here) under the arbitration clause
7    contained in Form U-4.  See, e.g., Spellman v. Securities, Annuities & Ins. Servs., 8 Cal.
8    App. 4th 452, 456 (1992); Fabian Fin. Servs. v. Kurt H. Volk, Inc. Profit Sharing Plan, 786
9    F. Supp. 728, 733-34 (C.D. Cal. 1991).  Finally, the Ninth Circuit has also noted, though
10   has not held, that statutory claims are arbitrable under the FAA.  See, e.g., Comer v. Micor,
11   Inc., 436 F.3d 1098, 1100 (9th Cir. 2006).

12         Plaintiff's arguments to the contrary are unavailing.  Plaintiff argues that the January
13   1, 1998 PartnerPlus plan governs plaintiff's retirement compensation, and that plaintiff's
14   vested firm contributions are controlled by the 1998 plan language (since plaintiff began
15   accumulating vested firm contributions at the inception of the plan in 1995), and not the
16   language of the 2004 plan.  Plaintiff argues that the 1998 PartnersPlus plan controls the
17   question whether and under what circumstances any dispute is to be arbitrated rather than
18   Form U-4 because the plan supercedes Form U-4.  The essence of plaintiff's argument
19   appears to be that the 1998 plan controls, not the 2004 plan nor Form U-4, and that the
20   1998 plan requires non-binding rather than the binding arbitration required by the 2004 plan
21   and Form U-4.

22         The arbitration provisions in both plans are, however, identical and require that "in
23   the event of any dispute, claim or controversy involving a Participant or any claimant and
24   the Plan, or PaineWebber or any Sponsor, arising out of the Plan, any such controversy
25   shall be resolved before a NASD arbitration panel in accordance with the arbitration rules of
26   the NASD."  Complaint, Ex B, at 11.4 and O'Connell decl., Ex. D at 11.2.  Neither plan
27   specifies whether the arbitration is binding or non-binding.  Plaintiff's reliance on section
28

4

11.5 of the 1998 plan for support is misplaced, as that section simply requires that a claimant exhaust the remedies set forth in the plan before instituting any "action or proceeding in any state or federal court of law or equity, or before any administrative tribunal or *arbitrator*." It does not provide that the arbitration referred to in the prior section is non-binding, nor does it provide that a court action can only be brought after arbitration has concluded, thereby suggesting that any arbitration is not final. If anything, it suggests that a claimant can proceed with either a law suit or arbitration after exhaustion. Thus, whether the 1998 plan or the 2004 plan applies, both provide for arbitration and neither specifies whether the arbitration is binding or non-binding, a decision that is within the authority of the arbitrator to make.

With regard to plaintiff's argument that the 1998 plan's arbitration provision somehow superceded Form U-4's arbitration provision, plaintiff has proffered no evidence or authority. Moreover, in order to prevail on this theory, the arbitration provision must be negated expressly or by clear implication – which plaintiff does not establish here. See, e.g., First Liberty Inv. Group v. Nicholsberg, 145 F.3d 647, 650 (9th Cir. 1998)(rejecting plaintiff's contention that subsequent agreement superceded arbitration provision of Form U-4). Furthermore, plaintiff's argument that one arbitration provision superceded another begs the central question whether this dispute must be arbitrated at all. As noted, both plans as well as Form U-4 require arbitration of this dispute. Thus, the court finds that both the ERISA and the common law claims are all subject to arbitration before NASD or its successor pursuant to Form U-4. Even if, however, the statutory claims are for some reason not covered by Form U-4, they are still subject to arbitration before NASD pursuant to both the 1998 and 2004 plans. NASD Rule 3080 makes it clear that arbitration is final and binding. See O'Connell Decl., Ex. B at 2.

Finally, plaintiff's insistence that defendants' purported failure to abide by the claims procedure set forth in the PartnersPlus plan should be construed as a waiver of their right to arbitration is without authority.

In sum, therefore, the court finds that (1) a valid agreement to arbitrate exists; and (2) the arbitration agreement encompasses the claims asserted by plaintiff in his complaint. As such, it is the arbitrator who must decide the merits. The motion to compel arbitration is, therefore, GRANTED and the case is STAYED pending completion of arbitration.

Although plaintiff failed to establish good cause for the late filing of his opposition brief, his motion for administrative relief is GRANTED and defendants' request to strike the late-filed brief is DENIED.

**IT IS SO ORDERED.**

Dated: May 8, 2008

_____
PHYLLIS J. HAMILTON
United States District Judge